## SOUTHERN RY. CO. v. J. A. BRUBECK, Admr.

Eastern Section. September 3, 1927.

No petition for Certiorari was filed.

1. **Railroads. Negligence. Infinitesimal space of time or distance may determine whether action comes under statutory or common-law negligence.**

However small space either of time or distance it may require, it is only essential to show that the automobile appeared in front of the moving train near enough to be struck by the engine in passing before the collision occurred, to determine the question as to whether or not the case must be tried under the statute where a recovery is not barred because of proximate contributory negligence, which only goes in mitigation of damages or whether it is to be tried under the law, where such proximate contributory negligence defeats any recovery.

2. **Railroads. Automobiles. Negligence. Automobile Act of 1917 is not in conflict with statute governing negligence of railroads.**

Driving an automobile upon a railroad track contrary to the provisions of Chapter 36, Acts of 1917, is gross negligence, and if the violation of the statute which forbids such conduct is the proximate cause of a collision, this conduct should always be charged to the plaintiff in mitigation of damages, and in extreme cases might reduce the recovery to nominal damages; but the violation of ·the Act of 1917 can not be set up as altogether excusing the railroad of the imperative duty imposed upon it to observe statutes intended to protect life and property.

3. **Pleading. Motion to strike is the proper way to reach the defects in a declaration averring both common law and statutory negligence.**

. A motion to strike is the proper way to reach the defects in the declaration which avers both common law and statutory negligence and of being unnecessarily prolix.

4. **Appeal and error. Judgment should not be reversed where improper evidence was taken from the jury.**

In an action to recover damages sustained in an automobile collision where defendant moved to strike the declaration as averring both common law and statutory negligence but counsel disclaimed any intention to aver common-law negligence and thereafter, the plaintiff introduced a certain ordinance of the city, but later any grounds of liability were withdrawn from the consideration of the jury save the one statutory ground, held there was no reversible error.

5. **Appeal and error. The Court of Appeals will not reverse except for' error affecting the merits.**

Under Shannon's Code, section 6351-6351A, the Court of Appeals will not reverse except for error affecting the merits of the case.

6. **Arrest of judgment. A motion for arrest of judgment will be sustained only for some defect appearing on the face of the record that would preclude the judgment.**

In an action by an administrator, where it was alleged that the suit was for the sole use and benefit of the father and the evidence showed that deceased left a mother who should share in the estate, held that this did not constitute grounds for arresting the judgment.

7. **Judgment. Executors and administrators. Where judgment is obtained by administrator in his representative character action by beneficiaries is barred.**

In an action by an administrator to recover damages for the death of his intestate, where it was sought to set aside the judgment because the declaration stated that there was but one heir when the evidence showed that there were two, held that the judgment should not be set aside for this reason because this suit would have concluded any other beneficiary.

8. **Action. Essence of· cause of action in tort stated.**

Every cause of action in tort consists of two parts, to-wit: the unlawful act and all damages that can arise out of it. For damages alone no action can be permitted. Hence if a recovery has once been had for the unlawful act, no subsequent suit can be maintained.

Appeal from Circuit Court, Sullivan County; Hon. H. T. Campbell, Judge.

Affirmed.

Burrow & Burrow, of Bristol, for appellant.

St. John & Gore and Caldwell & Brown, of Bristol, for appellee.

SNODGRASS, J. This is a suit for damages for personal injuries, resulting in the death of Serina Brubeck, a little girl ten years old. On February 2, 1926, she and her sister Gertrude, a year or two older, were riding in the back seat of a Chrysler coach, a closed car belonging to her uncle, Michael Busch, who, sitting on the front seat with his wife, Gertrude Busch, was driving the automobile. Busch and his wife had come from Beckly, Va., their home, and were on their way to Florida. These two children had been allowed by their parents, who were close relatives, to accompany them to Florida. They were going to visit some friends there and, in the meantime, to attend school. It thus appears that the children were in charge of the Busches, so placed.

About 2:30 in the afternoon of said February 2, 1926 as they were getting into Bluff City in this State a collision of the automobile with an east bound passenger train, No. 26, the Memphis Special of the plaintiff in error, occurred on a railroad crossing east of the depot as the train was leaving the station. The automobile was torn up. There were marks on the inside of the rail indicating that it was shoved toward Bristol, the way the train was going. The automobile was thrown down against the fence there, a witness said, a distance from the crossing of about as far as across this room, (presumably the court house) or near it, and looked to him like it was torn all to pieces. The occupants of the car were strung along in a row. The plaintiff's intestate was apparently unconscious, and was taken to Kings Mountain Memorial Hospital in Bristol. Her mother stated that it was there she found her thoroughly unconscious and very ill, and said the injuries seemed to be a crushed skull. She was asked:

"Q. Did she recognize you? A. I do not know, possibly she did; by my just laying my hands on her cheek I felt that she did.

"Q. She did not say anything to you? A. No, just pressed her hand on mine."

"She stated that she died Saturday morning at 2:40 on the 6th of February. Asked what were her actions during the time of the morning of the 3rd until the 6th, when she died, and how she appeared, she replied: 'Just tossing herself, throwing her limbs from one side of the bed to the other.'

"Q. Did she seem to be suffering? A. Yes, she suffered."

The little girl had gone to school and was in the fifth grade. Dr. P. O. Stant, who attended her, was called from Bristol, and when he arrived on the scene of the accident she was lying on one of the railroad trucks or handcar, apparently unconscious. He attended her on her being brought to the hospital and closed her wound. He said she had a gash right across the brow—through the brow of four

inches in length, rather deep; that you could pick it up, lift it up; that it seemed to be kind of peeled, about one inch above the brow, and the ear was severed near the middle, through the opening of the ear, apparently into the (bone?) somewhat, and the lobe of the ear was cut out, a little tag cut out. He said that by examining the spine the skull was evidently fractured; that they drew out blood; that was the main internal injury; that she died, he believed, the fourth day after the injury; that he saw her every day several times, and that she did not recover consciousness to his knowledge.

The declaration, which laid the damages in the sum of $30,000, contained several grounds of alleged liability, but the case was finally submitted to the jury on the single statutory ground comprehended in subsection 3 of section 1574, Thompson & Shannon's Code.

At the close of the plaintiff's proof, and again at the close of all the proof, a motion for peremptory instructions was made by the defendant, which being overruled, the cause was submitted to the jury as indicated, the jury finding the issues in favor of the plaintiff and assessing his damages in the sum of $12,500. On the motion for a new trial that was had this verdict was reduced by the court to $5,000, under penalty of a new trial, which was accepted under protest and an appeal perfected therefrom. Thereupon the motion was in other respects overruled. A motion in arrest of judgment was also made and overruled, and both sides have perfected appeals.

The defendant in error makes the single assignment that the court erred in requiring a remittitur of $7,500, or of any amount.

The plaintiff in error has filed eight assignments of error, as follows:

"I. It was error on the part of the court to refuse defendant's motion for a new trial on the ground that there is no evidence to support the verdict of the jury."

"II. The trial court erred in refusing to strike the declaration on defendant's motion, because of its unusual and unnecessary prolixity, and because it avers both statutory and common negligence in the same count."

"III. The trial court erred in declining to direct a verdict for defendant on its motion made at the conclusion of all the evidence on the only issue submitted to the jury."

"IV. The trial court erred in permitting a judgment to be entered for $5,000 for the use and benefit of the father of the intestate, J. A. Brubeck, because, under the law, one-half of any recovery had would go to the mother."

"V. It was error not to arrest the judgment on defendant's motion, because one-half of any recovery would go to the mother, who was shown to be living, and who testified as a witness on the trial of the case."

"ⅤI. The court erred in not sustaining defendant's objection to certain arguments made before the jury in the closing speech for the plaintiff; counsel said: 'And the witness Carnahan, the defendant brought him here, and he was called, but was not examined, and the presumption is that his evidence, if introduced, would have been against the theory of the defendant.' "

"VIII. The trial judge erred in refusing to charge defendant's request No. 3 set out on page 355 and 356 of the record, and No. 5, as set out on the record at pages 357 and 358."

The verdict of the jury on the questions submitted to them has settled the issues of fact in this lawsuit contrary to the contentions of the plaintiff in error. While he practically concedes that the question of complying with subsection 3 of section 1574 is foreclosed against him, yet he insists that section does not apply for the reason that there was in fact no collision by the automobile appearing in front of the moving train near enough to be struck by it before the collision occurred, but that as a matter of fact the automobile was run into the side of the car, and that therefore, under the authority of the case of Southern Railway v. Simpson, 149 Tenn., 458, 261 S. W., 677, the case should have been dismissed on its motion, and should now be dismissed, because under this contention there would be no evidence to support the verdict. Counsel discusses the evidence on this question at considerable length and with great ability, notwithstanding the jury found in favor of the contention of defendant in error on this question, that the automobile appeared in front of the train as an obstruction before the collision occurred, and we think there is abundant evidence in the record to sustain this finding. Counsel for plaintiff in error insists that "the legal principle involving a legal right cannot be settled upon a happening which takes place within one-fifth of a second." That "a great legal principle cannot be measured by the infinitesimal space of less than a fifth part of a second." But we think however small space either of time or distance it may require, it is only essential to show that the automobile appeared in front of the moving train near enough to be struck by the engine in passing before the collision occurred, to determine the question as to whether or not the case must be tried under the statute where a recovery is not barred because of proximate contributory negligence, which only goes in mitigation of damages, or whether it is to be tried under the law, where such proximate contributory negligence defeats any recovery. It will be observed that section 1575 provides that—

"Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property oc-

6 T. A.—32.

casioned by, or resulting from, any accident or collision that
may occur,''
grounds liability in the nature of a penalty, even though the failure to
observe the precautions may not have actually operated as the proxi-
mate cause of the collision, thus indicating that one of the purposes of
the act at least was to take no risk of its non observance. As illus-
trated by this very case, there may be times and conditions where its
nullity may be efficacious to save a life. Formerly it was held that
''always on the lookout ahead'' meant, that the lookout must keep
a place on the locomotive where he could see ahead to the best ad-
vantage; that if the engineer could not see, the fireman must; if the
fireman could not see, the engineer must; and that if neither could
see, someone else must. But this was liberalized to mean that, if an
exigency requires the fireman's attention from the lookout to other
duties, it excused the temporary absence of vigilance from an essential
place, which is the circumstance as to this case. The engineer was
on the inside of the curve approaching this crossing and his engine
obstructed his vision, a very potential reason as to why the whistle
should have been sounded on leaving the station and as required by
the statute, until it passed over this crossing and out of the city
limits. The court took the consideration of subsection 4 from the
jury, but who knows but what the observance of subsection 3 would
have prevented this awful catastrophe to strangers who, having thus
passed under a track, and possibly lulled by this circumstance to
think there was not any other, ran upon this other crossing, which
to say the least of it was not conspicious, and even less so from a
closed car, and was hit by this flying messenger of death, according
to the finding of the jury observing no precautions whatever.

It is insisted by plaintiff in error in effect that chapter 36 of the
Acts of 1917 in the case of automobiles practically repeals the stat-
ute under which this case was submitted to the jury. He invokes
the maxim which means, the statement of one thing is the exclusion
of another, as supporting his contention that the statute, which ex-
pressly provides against the abridgement of the common-law right
of recovery, necessarily excludes the idea of continuing in force stat-
utory rights of action which are in conflict with the new statute.
But his trouble is that the automobile act is not in conflict with the
statute under which the present rights are asserted. At best it mani-
fested a purpose that the act was to have no effect in common-law
actions as negligence per se, but if by construction it is to have ef-
fect in statutory actions, it is only such effect  as it could
have had in common-law actions, except for its saving clause,
which would be negligence per se, not barring a claim un-
der the statute. It is of course in no event in conflict with the
statute, and not even an implied repeal (which is not favored) is
indicated. In Southern Railway Co. v. Simpson, supra, the case was

reversed for error in the charge of the court, to the effect that under the statute it would make no difference whether the train ran into the automobile or the automobile ran into the train so far as liability was concerned.  The Supreme Court said that whether subsection 3 applies in any case where the collision or accident does not happen to an object in front of the train, that they need not decide, but were of opinion that subsection 3 does not apply in the case of an automobile running into the side of the train.   However, that the automobile act can have no other effect than as indicated, appears from the case of Crawford v. Nashville, Chattanooga & St. Louis Railway, 153 Tenn., 642.  So also it was held in the case of Tennessee Central Railroad v. Page, 153 Tenn., 95, that ''driving an automobile upon a railroad track contrary to the provisions of chapter 36, Acts of 1917, is gross negligence, and if the violation of the statute which forbids such conduct is the proximate cause of a collision, this conduct should always be charged to the plaintiff in mitigation of damages, and in extreme cases might reduce the recovery to nominal damages; but the violation of the Act of 1917 cannot be set up as altogether excusing the railroad of the imperative duty imposed upon it to observe statutes intended to protect life and property.''

Neither do we think the court was in error in refusing to give in charge either of the special requests specified in the eighth assignment.  As far as either of these requests were accurate statements of the law they had been sufficiently given in charge.

There is no reversible error in the second assignment.  While as stated in this instance a motion to strike was a proper way to reach the defect in the declaration averring both common law and statutory negligence, and of being unnecessarily prolix, it is admitted that at the time the motion was made counsel disclaimed any intention to aver common-law negligence, and thereupon the motion was overruled; yet as a matter of fact this action of the court was later corrected by him in refusing to submit to the jury any other grounds of liability save that of the violation of subsection 3 of section 1574. It is said by plaintiff in error that if defendant in error had lived up to his disclaimer all would have been well, but it is insisted that plaintiff below introduced an ordinance of the town of Bluff City limiting the speed of trains through the town to six miles an hour, when it was claimed the same objection was made and overruled. But as stated, later any other grounds of liabilty were withdrawn from the consideration of the jury save the one statutory ground submitted, which was in effect to sustain the motion that had been formerly overruled, and we cannot say any prejudice was sustained by the plaintiff in error in consequence of the earlier action of the court.  The evidence regarding the speed of the train was competent, and was later used in support of the contention that the train ar-

rived first, and, therefore, that the automobile ran into the side of the train instead of the train running into it.

This court will not reverse except for errors affecting the merits. Shannon's Code, sections 6351-6351a. We do not regard the verdict as excessive after the remittitur as claimed in the so-called third assignment, for the reasons stated before in this opinion as to the strangeness of the neighborhood to the driver and inconspicuous appearance of the track.

The fourth and fifth assignments are to the effect that the court erred in permitting a judgment for $5,000 for the use and benefit of the father of the intestate, J. A. Ruebeck, because it is insisted that under the law one-half of any recovery would go to the mother, and that he should have arrested the judgment because half of any recovery would go to the mother, who was shown to be living, and who testified as a witness on the trial of the case, and that in any event the judgment should be arrested because it was not rendered for the use and benefit of any particular person. It is insisted that the judgment is void on its face in that it does not conform to the declaration, and in any event should be reduced to one-half, and that the court was in error in not so reducing it.

In the case of Railroad v. Brown, 125 Tenn., 351, 143 S. W., 1129, it was held that only matters specifically pointed out in a motion in arrest can be considered in this court. Upon resorting to the motion in this case it is found that the only reason assigned therein for arresting the judgment is "because the suit was brought for the use and benefit of the father, and not for the use and benefit of both father and mother," which motion was denied by the court. This is no ground for arresting the judgment, which is to be had only for some defect appearing in the face of the record that would preclude the judgment. It does appear in the proof that there was a mother, who would be, without anything more, entitled to one-half of the recovery, and it does appear from the declaration that the administrator sues for the benefit of J. A. Brubeck, father of decedent, who is alleged to be the sole distributee and next of kin. It does not appear what the Virginia law is with respect to beneficiaries. It was sought to be proven that the father was the sole beneficiary, but objection was made, or rather it was insisted by counsel for plaintiff in error that that was a matter of law, and the attempt was abandoned. Without other proof the presumption is that the Virginia law is like ours, and the mother would have been also a beneficiary. However, no question was made with reference to the right of the administrator to maintain the suit alone for the benefit, and after verdict we think it was then too late to insist that a new trial be had because the mother had not been mentioned as a beneficiary, or that the father was mentioned as the sole beneficiary. We think notwithstanding the allegation in the declaration that he was the sole dis-

tributee, that the recovery would inure equally for her benefit, under the case of Railroad v. Brown, supra. It is insisted that in the case just referred to it was said that there was no other beneficiary proven. It is replied that it also stated that the administrator also recovered as trustee for the real beneficiaries under the statute, and could be held to account to them, whoever they may be, for the proceeds of the judgment. We do not think merely because the declaration alleged that he was the sole beneficiary, and the recovery recorded the full measure of the damages, that any abatement for that reason should have been had because of the reasons assigned in the motion for a new trial. We think, without regard to the statute of limitations, that this suit would have concluded any other beneficiary, because of the representative character in which the administrator sues. "Every cause of action in tort consists of two parts, to-wit: the unlawful act and all damages that can arise out of it. For damages alone no action can be permitted. Hence if a recovery has once been had for the unlawful act, no subsequent suit can be maintained." Railroad v. Bridgeman, 95 Tenn, (11 Pickle) 629, 32 S. W., 762.

In the case of Love v. Southern Railway, 24 Pickle, 122, referring to this holding, it was said:

"If we give it a more enlarged meaning and hold that it embraces not only the unlawful act and all damages that can arise out of it, but also the parties who are entitled to maintain it, we think that this means that only the parties legally authorized to bring the suit need be named in the summons, leaving the declaration to state those who will be beneficially entitled to receive the money. Under our statute the administrator is a party legally authorized to bring suit, if not brought by the widow, while the person named in the statute as widow, children, or next of kin, are the parties beneficially entitled to receive the proceeds. It is in any event the right of action of the deceased, and not of the beneficiaries. It is sufficient, therefore, if the summons issue in the name of the administrator as the party legally authorized to sue, provided it is alleged in the declaration, and shown in the proof, that there are statutory beneficiaries. This being so, we come to the question of amending the declaration in this cause. We are of opinion that the original declaration which was filed was a nullity, so long as it failed to aver statutory beneficiaries, and to designate them in any way. The defendant might, therefore, have forced the plaintiff to file his declaration, or have demanded judgment for failure to prosecute the suit, if he chose to do so. But it did not, and the plaintiff before any adjudication on this ground, offered to file a declaration which did state a cause of action and parties entitled. We are of opinion the action was commenced

by the filing of the original summons so as to arrest the running of the statute of limitations. The filing of the declaration then was based upon it and related back to it. Hence the amendment should have been allowed, and the defense of the statute of limitation was not good.''

From the foregoing authorities it would appear that, considering there were beneficiaries entitling the administrator to sue, and as his suit was that of the decedent, and not that of the beneficiaries, though the recovery went to their benefit, and that his suit as trustee concluded all the beneficiaries whether mentioned or not, and that he could be held to account to them whether mentioned or not, the fact that one is alleged to be the sole beneficiary should be regarded as immaterial and surplusage, and not be allowed to defeat the recovery or occasion a reversal, which would be the result of a naked technicality, but if necessary, however, simply to conform to the allegation of the declaration and proof, that an amendment should be allowed here and now, adding the name of the mother as a beneficiary. The right of amendment, under the authority of Love v. Southern Railway, supra, would exist should the case be remanded, and no good purpose affecting the merits of the case could be had to reverse for this purpose alone. There was proof of a mother.

In the case of Martin, et al. v. Bank of Tennessee, 2 Cold., 335, it was held: ''Under the provisions of the Code the writ and declaration can be amended here in affirmance and support of the proceedings of the court below.'' With this privilege the fourth and fifth assignments will be overruled.

The declaration in the case is a part of the judgment and, when taken together, we think the judgment sufficiently indicates the uses for which it is rendered, reasonably conforms and is not void upon its face.

Neither do we think there is any reversible error in the refusal of the court to interfere with the argument as allegedly made in the sixth assignment of error. Whether the argument was farfetched or otherwise, we do not think it affected the merits of the case. If the case is to be reversed because of a mistaken proposition of law or presumption argued to the jury, the difficulties of the trial would be enormously increased. If as counsel insists it requires no reference to lawbooks to know that no presumption arises from the failure to introduce a witness, unless it first appear that such person was in position to have knowledge of some relevant fact, it is an illustration that such argument, if produced to the jury, was not calculated to influence them very greatly, nor does it appear that it has.

We think, taking into consideration the liberal discount that has been made by the trial judge in the remittitur that was required, that the verdict is not excessive as it was permitted to stand; nor do we

think, under the circumstances, that nominal damages would meet the requirements of this case. However, in view of the negligence of the driver of the automobile in failing to keep a proper lookout for this railroad, which was discoverable had he actually so employed himself, we do not feel warranted in restoring the judgment to the original amount represented by the jury's verdict. The Circuit Judge reduced it to the amount indicated, and we are satisfied with his action.

It results that all assignments of error are overruled and the judgment of the lower court affirmed, with costs against appellant, Southern Railway Co.

Portrum and Thompson, JJ., concur.