W. T. EARHEART v. HAZLEWOOD BROTHERS et al.

Middle Section.  October 1, 1932.

Petition for Certiorari denied by Supreme Court, January 21, 1933.

J. L. Jones, of Pulaski, for plaintiff in error.
Bennett Eslick, of Pulaski, for defendant in error.

FAW, P. J. On August 8, 1932, the judgment of the Circuit Court in this case was affirmed by this Court, for the reason that it did not appear from the transcript filed here that the bill of exceptions was filed below within the time allowed by law, and there were no assignments of error on the technical record.

Thereupon the plaintiff in error, American Eagle Fire Insurance Company of New York, filed a petition for a rehearing and for leave to suggest a diminution of the record, accompanied by a certificate of the Clerk of the Circuit Court of Giles County, and also a stipulation of counsel for the parties, from all of which it appears that the bill of exceptions was in fact seasonably filed, and was properly endorsed as filed by the Clerk at the time it was delivered to him for filing, but that such endorsement was omitted from the transcript sent up to this Court by inadvertence and oversight of the Clerk of the Circuit Court.

The petition for a rehearing was filed near the close of the last term, and the case thus pending on petition for a rehearing was continued until the present term and held under advisement by the Court.

The petition is granted and our former judgment of August 8, 1932, is vacated and set aside. The supplemental transcript exhibited with the petition for a rehearing will be filed as a part of the transcript of the record in this Court, and the judgment of the Circuit Court, insofar as it is assailed by the assignments of error, will now be reviewed on the record. Russell v. Russell, 3 Tenn. App., 232, 236; Cobble v. International Agricultural Corporation, 2 Tenn. App., 356, 361.

Certain facts disclosed by the record may be briefly stated as follows:

During the period of time including March, 1930, and January, 1931, Hazlewood Brothers (a partnership composed of A. B. Hazlewood and Emmett Hazlewood) operated, as a common carrier of freight, under a certificate of public convenience and necessity granted by the Railroad & Public Utilities Commission of the State of Tennessee, three motor trucks, viz: one ''International'' truck and two ''Federal'' trucks.

The Hazlewood Brothers lived at Pulaski, Tennessee, and on March 14, 1930, the American Eagle Fire Insurance Company of New York, through its agents at Pulaski, issued a policy of insurance, with a rider styled ''Motor Truck Merchandise Floater'' attached thereto, which purported to insure Hazlewood Brothers in terms which we quote from the policy as follows: ''On lawful goods and/or merchandise owned by the Insured or for which he or they may be held legally liable as Carrier, consisting principally of General Merchandise to a total amount in all places of not exceeding $2,500, but for not more than the amount per truck as specified below, while loaded for shipment on and in transit in or on the motor truck or trucks described below, owned and operated by the Insured hereunder within a radius of three hundred miles from Pulaski, Tennessee, against loss or damage directly caused by the following mentioned perils.''

Then follows an enumeration of the ''perils'' thus insured against, viz: (1) Fire; (2) Lightning; (3) Cyclone, Windstorm and Tornado; (4) Flood; (5) Collision; (6) Upset and/or overturning of the truck or trucks; (7) Collapse and/or subsidence of bridges; and (8) Marine perils while on Ferries.

Along with each of the aforesaid eight ''perils'' there is a statement in the nature of a definition or interpretation thereof, but these definitions are not material to the present inquiry.

Below the aforesaid enumeration of perils, there is a description of the three trucks and a schedule of the ''Limit of Liability'' on each truck, viz: $1,500 on the ''International'' and $500 on each ''Federal.''

On April 18, 1930, an additional rider was attached to said policy, which rider was styled ''Endorsement for Cargo Policies,'' and, in its first two paragraphs contains the following provisions:

''(1). It is understood that the policy to which this endorsement is attached covers the motor vehicles described in the policy and any motor vehicles substituted therefor, but not additional motor vehicles; and the company agrees to pay, within the limits of the policy, or any endorsement attached thereto, any judgment rendered against the assured as the result of damage to or loss of property while in the possession or under the control of the assured.

"(2). Cancellation of this policy shall not take effect nor shall same expire until after twenty (20) days' notice in writing shall have been given to the Railroad and Public Utilities Commission of Tennessee, and it is understood and agreed that this policy shall remain in full force and effect until terminated by such notice."

On April 30, 1930, another rider, styled "Motor Truck Merchandise Floater," was attached to the policy, "in consideration of an additional premium of $10.94." This latter rider was in the same form and contained the same provisions as the aforementioned rider of the same style attached to the policy when originally issued, except that the total amount of insurance was increased to $3,000, the radius of operation was made "unrestricted," and the "Limit of Liability" was fixed at $1,000 on each of the three trucks.

The aforesaid original insurance policy and the additional contracts evidenced by the subsequent riders were procured by Hazlewood Brothers in compliance with requirements of the Railroad and Public Utilities Commission, and the policy, with the riders attached, was deposited with the Commission, and was in force at the time of the loss which will now be mentioned.

On a day in January, 1931, W. T. Earheart, who was then engaged in the automobile repair business at Pulaski, bought certain automobile equipment or "parts," of the value of $130.04, from a dealer in Nashville, Tennessee, and the goods thus bought by Earheart were delivered to Hazlewood Brothers at Nashville for shipment by truck to Pulaski, but no part of said shipment was delivered to the consignee, or to anyone for him; and on March 10, 1931, W. T. Earheart sued Hazlewood Brothers and the American Eagle Fire Insurance Company of New York (hereinafter called Insurance Company), before a Justice of the Peace of Giles County, to recover the value of the merchandise lost in transit as aforesaid.

The Justice of the Peace gave judgment for plaintiff Earheart and against both defendants for $121.04 and costs. Hazlewood Brothers did not appeal, and, so far as appears they have acquiesced in the judgment of the Justice of the Peace, but it does not appear that the judgment thus rendered against Hazlewood Brothers has been paid.

The Insurance Company appealed to the Circuit Court of Giles County, where the case was tried to a jury, which trial resulted in a verdict of the jury, and judgment of the Court thereon, in favor of the plaintiff and against defendant Insurance Company, for $130.04 and all the costs of the cause.

A motion for a new trial on behalf of the Insurance Company was 'overruled, and it thereupon appealed in error to this Court and has assigned errors here.

It is seen from the foregoing statement that the case as docketed is, according to the usual practice, incorrectly styled, as the Insurance Company is the plaintiff in error and W. T. Earheart is the defendant in error; but to avoid confusion in the identity of the case, we have retained the style as it appears on the docket; and, for convenience, we will, in this opinion, refer to W. T. Earheart as plaintiff and to the Insurance Company as defendant.

Through its first assignment of error defendant Insurance Company complains of the action of the trial court in overruling its motion for a directed verdict made at the conclusion of the plaintiff's proof in chief. This assignment is overruled for the reason that defendant Insurance Company waived its motion made at the close of plaintiff's proof in chief by introducing evidence in its own behalf after its motion then made had been overruled. Life & Casualty Insurance Co. v. Robertson, 6 Tenn. App., 43, 56, and cases there cited.

The predicate of defendant's second and third assignments of error is that the proof shows that the goods delivered by plaintiff Earheart to Hazlewood Brothers for transportation as aforesaid were stolen, and that the policy of insurance on which plaintiff's action against defendant Insurance Company is based does not cover theft of goods, but covers only a loss brought about by one of the aforesaid eight "perils," or hazards, enumerated in the original policy.

Defendant says, through its second assignment of error, that, for the reason just stated, the trial court erred in overruling its motion for a directed verdict made at the close of all the evidence; and, through its third assignment, defendant says that, for the same reason, the trial court erred (a) in overruling defendant's motion for a new trial and rendering judgment against defendant on the verdict, and (b) "in instructing the jury, in effect, that, under the facts of this case and under the policy, the defendant, the American Eagle Fire Insurance Company, was liable, irrespective of whether the goods were lost through one of the hazards or by theft, and because the trial judge erred in refusing to instruct the jury in accordance with Special Request No. 1, to the effect, that the burden of proof is on the plaintiff to show that the goods were destroyed by one of the eight hazards mentioned in the original policy, and that if they were not so destroyed then the jury should find for the defendant."

It is said in the brief of learned counsel for defendant Insurance Company that "the sharp and controlling issue in this lawsuit is whether or not the above paragraph of the 'Endorsement For Cargo Policies' " (referring to the first paragraph) "is broad enough to cover theft of goods."

The undisputed proof is that the goods involved in this case, consigned to W. T. Earheart, Pulaski, Tennessee, were loaded on the

"International" truck of Hazlewood Brothers at Nashville; that the truck was, on that day, driven by George Riley, colored, and was in charge of Emmett Hazlewood; that the truck reached Pulaski at or after nightfall of the day it left Nashville, and was not unloaded that night, but was driven into the barn of A. B. Hazlewood, just outside the corporate limits of Pulaski, and remained there until the following morning; that Emmett Hazlewood and George Riley made deliveries of freight from said International truck on the following morning but merchandise to the value of about $240, including the said goods of plaintiff Earheart, was missing, and has never been found, and that A. B. Hazlewood's barn, where the truck remained during the night as aforesaid was not locked.

The proof also shows that the goods in question were not destroyed or damaged by either of the eight "perils" specifically named in the original policy, nor by any act of God or the public enemy. It is quite clear that plaintiff's goods were lost in transit (either by theft or otherwise) under circumstances which render the carrier, Hazlewood Brothers, liable for the value thereof; and the question for decision is whether or not such loss is covered by the policy on which defendant Insurance Company is sued in this case, which policy, of course, includes the "riders," as they became a part of the policy when attached thereto.

It is obvious that the insurance policy involved in this case was procured by Hazlewood Brothers and issued by defendant Insurance Company in order that it might be filed with the Railroad and Public Utilities Commission in compliance with the requirements of that Commission made under the authority of chapter 58 of the Public Acts of 1929, which provides for the regulation, supervision and control of persons, firms, corporations and associations owning, controlling, operating or managing motor vehicles used for transporting persons or property for compensation on the public highways of this State. In section 3 of said Act it is provided that

"No motor vehicle shall be operated upon any such public highway in this State for the purpose of transporting passengers or property for hire by virtue of such certificate until there shall have been filed with the Commission a bond, indemnity undertaking, or policy of insurance executed by a company, mutual association or reciprocal exchange legally authorized to execute such instruments in the State of Tennessee and approved by said Commission, in such reasonable amount and under such terms and conditions as said Commission may prescribe; and such bond, indemnity undertaking or policy of insurance shall be conditioned to pay any judgment rendered against such certificate holder and/or operator (within the limits of said bond, policy or undertaking) as the result of damage from personal injury

or damage to property arising out of the actual operation of such vehicles, or for damage to or loss of property while in the possession of or under the control of any such operator in this State; and failure upon the part of the operator and/or certificate holder continuously to maintain such bond, policy or undertaking in force, shall subject such certificate to revocation."

When the first paragraph of the rider styled "Endorsement For Cargo Policies" is read in connection with the provisions of the statute above quoted and in the light of the fact that the policy was issued to a common carrier of freight, and could not be cancelled or terminated without twenty days notice in writing to the Railroad and Public Utilities Commission of Tennessee, the conclusion seems irresistible that it was intended that the policy should cover the liability prescribed by the statute which we have quoted above. By the terms of the rider of April 18, 1930, the Insurance Company "agrees to pay, within the limits of the policy or any endorsement attached thereto, any judgment rendered against the assured as the result of damage to or loss of property while in the possession of or under the control of the assured." This is substantially the wording of the statute, when confined to a policy of insurance.

The paramount purpose of the above quoted provision of the said Act of 1929, as applied to common carriers of freight by motor vehicles, is to protect the public against damage to or loss of property while in the possession of or under the control of such carriers.

It is insisted on behalf of defendant Insurance Company that the clause in the rider of April 18, 1913, restricting the Insurer's agreement to pay "within the limits of the policy or any endorsement attached thereto," operates to confine the coverage of the policy to the eight "perils" specifically named in the original policy. To so construe the policy would defeat the purpose which the parties had in view, viz: to comply with the provisions of section 3 of chapter 58 of the Acts of 1929, heretofore quoted.

The policy specified the *"limit of liability"* on each truck (in this instance, $1,000), and the agreement of the Insurer to pay any judgment rendered against the Insured as the result of damage to or loss of property while in their possession or under their control for the purposes of transportation on either of their trucks was limited to $1,000, and the restriction to the "limits of the policy or any endorsement attached thereto" had reference to such maximum limit of the amount of insurance.

"Policies of insurance should be construed, like other contracts, so as to give effect to the intention and express language of the parties." Seay v. Georgia Life Insurance Co., 132 Tenn., 673, 676, 179 S. W., 312. But the purpose for which the contract was executed, when that purpose appears, affords an aid to its interpretation; and

"that construction will be adopted in the case of somewhat inconsistent provisions which, while giving some effect to all of them, will at the same time plainly tend to carry out the clear purpose of the agreement; that purpose which it is obvious all the parties thereto were cognizant of and intended by the agreement to further and to consummate." Stoops v. Fire Insurance Co., 160 Tenn., 239, 242, 22 S. W. (2d) 1038.

The principle just stated was applied by the Supreme Court of South Carolina in the case of Ott v. American Fidelity & Casualty Company (July 29, 1931), 161 S. C., 314, 159 S. E., 635, 76 A. L. R., 4, where it was held that a policy of liability insurance taken out pursuant to statute as a condition of a certificate for passenger-carrying vehicle on improved public highways will be presumed to have been intended to effectuate, and not evade, the purposes of the statute, and must be construed in the light of the statute.

Such was, in substance, the ruling of the learned trial judge in the instant case, and we concur in his reasons and his conclusions.

We find nothing in the opinion of this Court in the case of Holland, Administrator, v. Morrison (filed November 21, 1931, and *certiorari* denied by Supreme Court February 13, 1932, and cited for defendant in this case), which is in conflict with the views expressed herein.

The second and third assignments of error of defendant Insurance Company are overruled. There is one other assignment of error, viz: that "the Court erred in failing and refusing to sustain the motion of the defendant in arrest of judgment and in overruling the same, for causes set out under the third assignment."

The motion in arrest of judgment was as follows: "In this cause comes the defendant, the American Eagle Fire Insurance Company, and moves the Court to arrest the judgment heretofore rendered against it in this cause upon the same grounds contained in the motion for a new trial, which is here attached as fully as if herein set forth word for word."

The foregoing motion is based upon a misconception of the office and scope of a motion in arrest of judgment. The motion for a new trial in this case (which it is sought to adopt as the basis of the motion in arrest of judgment) is predicated on facts disclosed by the evidence and on the charge of the Court to the jury, whereas, a motion in arrest of judgment lies only for defects on the face of the technical record—usually for defects in the pleadings—and cannot be rested upon the evidence or the charge of the Court to the jury. 15 R. C. L., p. 683; Note, Anno. Cas., 1913-E, p. 72; Pelican Assurance Co. v. American Feed & Grocery Co., 122 Tenn., 652, 655, 126 S. W., 1085; Southern Railway Co. v. Brubeck, 6 Tenn. App., 493, 500. The fourth assignment of error is overruled.

This disposes of all the questions raised by the assignments of error. The judgment of the Circuit Court is affirmed, and judgment will be entered here in favor of W. T. Earheart and against defendant Insurance Company and the sureties on its appeal bond for the sum of $130.04, with interest thereon from the date of the judgment below (March 4, 1932), and for the costs of the cause, including the costs of the appeal.

Crownover and DeWitt, JJ., concur.