S.A. Smith instituted this suit in the Circuit Court of Knox County for damages, on account of the alleged misconduct of defendant and its agents in assaulting him and causing him to be arrested and taken from one of defendant's busses while he was a passenger thereon going from Knoxville to Maynardville. Defendant filed its general plea of not guilty, and also specially pleaded in defense of the alleged wrongful removal of plaintiff from the bus that plaintiff was under the influence of intoxicating liquor; that he was violating a rule of the company in that he was standing in the aisle of the bus while it was in motion and refusing to take his seat, and that he was causing or threatening to cause annoyance to other passengers on the bus. A trial of the cause by the court and jury resulted in a verdict and judgment for the sum of $400. Defendant entered its motion for new trial, and same having been denied, an appeal in error has been presecuted to this court and errors have been assigned herein.
There is considerable dispute as to the details of what happened between the time plaintiff boarded the bus and the time he was ejected. However, the material facts are not in dispute. Plaintiff boarded the bus at Knoxville some time prior to its departure around five o'clock in the afternoon, intending to go to Maynardville. A friend of his, Paul Rosenbaum, also entered the bus at something near the same time, and they exchanged greetings. Plaintiff seated himself on the right front seat of the bus. At the time he sat down the seat was already occupied by a man named Glickman. Paul Rosenbaum went to a seat near the rear of the bus, and occupied a seat with another *Page 629 
passenger. All seats in the bus were filled or practically filled at the time.
When the bus had traveled some distance out Broadway in the City of Knoxville, plaintiff called to his friend, Rosenbaum, in the rear of the bus to bring him a cigarette or some tobacco. In response to the call which was sufficiently loud to be heard from the front of the bus to near the rear Rosenbaum went from the place where he was seated to where plaintiff was seated and handed plaintiff some tobacco. It is positively testified that the driver of the bus stopped it at this juncture and informed Rosenbaum that he would have to be seated while the bus was in motion, and that Rosenbaum returned to his seat. Rosenbaum says he did not hear the driver tell him that he would have to be seated, but we think his failure to hear might have resulted from the loud conversation being carried on by plaintiff.
After Rosenbaum had returned to his seat, the elapsed interval not definitely appearing, plaintiff got up out of his seat and stood in the aisle, he says for the purpose of going back to where Rosenbaum was seated. At this juncture the bus driver told plaintiff he would either have to sit down or get off of the bus. All witnesses agree as to this request by the driver. Smith did not sit down, but responded that he would sit down when and where he pleased; that he was a freeborn American Citizen, and would do as he pleased; that he had had one suit against the bus company and had collected from them and would do it again. After the bus driver had repeated his request to plaintiff to sit down or get off of the bus, plaintiff continued to stand in the aisle, and as testified to by Mrs. Lillie Newman and not denied standing over the bus driver in a threatening attitude, the driver pulled the bus over to the curb and called for a policeman to come and take plaintiff off of the bus.
The driver remained out of the bus until the policemen arrived. Policemen Byrd and Christenberry answered the call. When they approached the bus, plaintiff got up out of his seat and met them as they entered the bus. Both of these policemen are positive in their statements to the effect that plaintiff was drunk at the time they removed him from the bus; that he talked and acted like a drunk man, and that he was drunk. He admits that he had drunk two bottles of beer before boarding the bus, though he does not state the kind of beer or give any idea of its content. He says that he was not drunk, but it is clear that this statement would be merely an opinion about which he would be incapable of judging, if he were in fact drunk. Judge Stooksbury, offered as a character witness for plaintiff, says that plaintiff had the reputation of a drinking man even while he was sheriff of Union County. It is not disputed that plaintiff stood in the bus, and as testified to by one of the witnesses, and not denied, in a threatening manner until the bus was stopped. After the bus *Page 630 
had stopped for the purpose of having him removed for refusal to sit down plaintiff did go back and sit down near his friend Rosenbaum.
It appears from the testimony of Mrs. Douglass, witness for the plaintiff, and Mr. Glickman, witness for defendant, that there was considerable disturbance caused by Mr. Smith before plaintiff called Mr. Rosenbaum. Plaintiff was sitting by Mr. Glickman on the same seat and his conduct was most annoying to Mr. Glickman practically from the time he entered the bus until he was ejected. And we think the undisputed facts clearly indicate that his conduct was most annoying to passengers, especially the ladies, and that they were in actual fear for their own personal safety on account of same. Some of them left the bus as soon as it stopped and were forced to stand on the ground in disagreeable March weather from that time until the officers arrived to remove him. They returned to the bus and resumed their journey after plaintiff had been removed.
Under these undisputed facts it must be concluded that the condition and behavior of plaintiff was such as to make him objectionable to other passengers on the bus; that there was nothing left for the driver of the bus to do except to stop the bus and eject plaintiff himself or call officers to do so. By taking the undisputed testimony to the effect that plaintiff was standing over the bus driver in a threatening attitude, we think it would have most likely precipitated a personal altercation, if the driver had attempted to eject him and that he exercised proper judgment in stopping the bus and calling for police assistance.
Complaint is made that plaintiff was assaulted by an employee of the bus company while the driver was calling officers. In this connection it appears that a driver for the defendant was riding on the bus at the time of the disturbance. He was not on duty of any kind for the company at the time, but was riding as any other passenger from Knoxville to Fountain City on a personal mission, wholly outside the course of his employment. While the driver of the bus was calling the police office, said employee approached plaintiff in a more or less threatening attitude and invited him off of the bus. It is claimed that he shook his fist under the nose of plaintiff and abused him.
It appears without dispute that the defendant company had promulgated a rule requiring bus drivers to be certain that passengers were seated at all times while the bus was in motion, and that a driver failing to enforce this rule was subject to dismissal. Plaintiff concedes the right of defendant to make the rules in question and concedes in brief that the rules so made were reasonable. And while it is insisted that he was not violating these rules, it is established by the undisputed evidence of his own witnesses and by his own admission that plaintiff was violating the rule requiring passengers to be seated at all times while the bus was in motion. Having refused to abide by *Page 631 
the reasonable regulations of the company and being responsible for the absence from the bus of the driver, the only person shown to have any authority in connection with the custody of the same, he is in no position to complain that a fellow passenger upbraided him for the disturbance he had caused.
It is true that defendant owed a high degree of care to its passengers, including plaintiff. Under the undisputed evidence in this case plaintiff was refusing to abide by the reasonable rules promulgated by the defendant for the protection of its passengers. All of the witnesses who are specific in their testimony say that he was either drunk, under the influence of intoxicants, or that he was acting like a drunk or crazy man. We think a man acting in this manner standing in the aisle of a moving bus would be an object of danger to the convenience and comfort of other passengers, especially ladies. The natural consequence to be expected would be that he would fall into other passengers while the bus was rounding curves, and that the high degree of care required of a common carrier obligated defendant to remove the threat. Railroad v. Hatch, 116 Tenn. 580, 590, 94 S.W. 671.
There is some insistence in this record to the effect that the driver of the bus had some grivance against plaintiff, and that his conduct was actuated by such grievance. This insistence might be worthy of some consideration, if the driver had personally sought to eject plaintiff, and had assaulted him. But this insistence must fail in the light of the fact that the driver was careful to avoid any personal encounter with plaintiff, even though plaintiff stood over him and threatened him, or stood over him in a threatening manner. There is no insistence that the driver of the bus committed any assault upon the plaintiff, unless it could be said that his action in calling the police and having them remove him constituted an assault. The insistence is that Buchanan, an employee of the defendant, but in no way connected with the operation of the bus, committed an assault upon him. Under the circumstances we think defendant not liable for the actions of Buchanan to any greater extent than it would have been had he been a complete stranger. He was not engaged in any duty for the master, was not furthering any interest of the master, the transaction was not under his supervision, and there was no burden upon the master to anticipate that he would take a hand in the matter on behalf of the master. The course pursued by the authorized agent was to seek the aid of a peace officer to eject plaintiff, as contrasted to the action of Buchanan in seeking a personal encounter with plaintiff. And it might be said that Buchanan made no attempt to enforce any rule or regulation of defendant or to eject plaintiff from the bus. He sought a personal encounter with him, entirely separate and apart from any duty that he might have had. There is nothing in this record to indicate that the driver of the bus had any reason to anticipate *Page 632 
that an assault would be committed on plaintiff while he was away from the bus, and in the absence of such defendant would not be liable for his actions. Ferry Companies v. White, 99 Tenn. 256, 263, 41 S.W. 583.
For the reasons stated we think there was no evidence to support the verdict of the jury and the judgment of the court. If a motion for directed verdict had been made we would sustain same and dismiss the suit, but in the absence of motion for directed verdict the only course left is to remand the cause for a new trial, which becomes necessary under our view of the case.
Numerous other questions are raised by assignment of errors, but we think it necessary to notice only one further question. Defendant introduced in evidence and relied upon certain rules adopted by it for the protection of passengers on its busses. These rules required passengers to remain seated while the bus was in motion. The trial judge was asked to charge the jury as a matter of law that these rules so relied upon were reasonable. This request was refused, and the refusal is now assigned as error. And we are of opinion that the failure of the trial judge to give the request in charge to the jury was error.
We think it is axiomatic that a common carrier of passengers has and should have the right to adopt reasonable rules for the conduct of such passengers for their own and the safety of others on the carrier. And we think it further axiomatic that these rules should be uniform in their application and enforcement. There is no insistence on the part of plaintiff that the rules of defendant were unreasonable, and there is no controversy as to the fact that they were the regularly adopted rules governing the operation of busses. In other words the facts are not in dispute and we fail to see where reasonable minds could reach different conclusions as to their reasonableness. Under these circumstances we think the question of the reasonableness of the rules was a question of law for the court to pass upon instead of for the jury. This seems to be the general rule.
"Where the facts are not in dispute and do not admit of conflicting inferences, the generally accepted view is that the reasonableness of a rule or regulation of a common carrier is not a question of fact for the jury, but of law for the Court." Am. Jurisprudence, Vol. 10, Sec. 1026.
A different holding would prevent the adoption and enforcement of uniform rules and regulations. The same rules might be held reasonable by one jury and unreasonable by another, thus resulting in complete confusion for carriers and passengers. The best interests of society demand that rules of conduct be uniform and that there should be uniformity of application. Common carriers have a right to know their obligations as well as their rights, and they should be privileged to adopt fixed rules for government of passengers. *Page 633 
And while the question of whether or not a passenger violated such rule is and should be a question for a jury, the question of the reasonableness of same should not be left to be determined by a different jury each time they are questioned in a suit. For the reasons stated, we think the trial judge improperly refused to give the request in question, and that same constituted reversible error.
The cause will be remanded to the Second Circuit Court of Knox County for a new trial. Costs of appeal will be paid by defendant-in-error.
Portrum and McAmis, JJ., concur.