JOHNSON CITY TRANSIT CO. v. HALL.—152 S. W. (2d) 251.

Eastern Section. February 15, 1941.

Petition for Certiorari denied by Supreme Court, June 14, 1941.

Nelson Swan and John Wiley, both of Johnson City, for plaintiff in error.

Sam W. Price, of Johnson City, for defendant in error.

PORTRUM, J. This suit was instituted before a Justice of the Peace in a plea of damages growing out of a breach of contract of carriage by the ejection of the plaintiff from the bus of the defendant, while a fare-paying patron, "without any excuse or cause, exposing the plaintiff to the freezing cold in his sick and weakened condition, to his damage in the sum of $400." A judgment was entered in favor of the plaintiff and an appeal prosecuted to the Circuit Court, where the case was heard before the court and a jury. The jury returned a verdict of $250 in favor of the plaintiff, and the defendant perfected its appeal in error to this court for a review.

The plaintiff is a World War veteran, and was employed as a ward attendant at the Veterans' Administration Facility (hospital), in Johnson City. In going to his work from his home he walked in good weather and rode when on night duty and in bad weather. That on the night of January 26, 1940, he left his home at about seven o'clock for the purpose of going to Scott's store, where he intended waiting for the bus. That the temperature at the time was about 14 degrees above zero. That Scott's store is a walk of approximately 25 minutes from his home, or about a mile and a half; that he felt all right when he left his home, but got awfuly cold when he got to Scott's store, when he found it closed; that he stood around at the store seven or eight minutes until a bus came and then he got on it; this bus was traveling in the opposite direction from which he desired to go, but rather than wait for a bus traveling in the other direction, he boarded this bus, went to the end of the line and came back with it into the center of the town where he expected to and did transfer to another bus going to the Veterans' Home and his work. He states that the bus was warm and as he rode toward town he began to get sick, and that when he got to town he was helped off of one·bus and on to another bus, transferring as above stated, and while on this bus journeying toward his destination he began to vomit and gag, using his glove and handkerchief to catch any emission, and his condition attracted the attention of the driver, who stopped the bus and ejected the plaintiff at a store which was about 100 feet from a taxi stand. When he was ejected at the store, he walked to the taxi stand and took a taxi for the Veterans' Hospital.

Upon arriving at the hospital he was unable to work but could not be relieved, and he worked that night as a ward attendant. He became an inmate of the hospital himself on the following morning with a case of flu, where he remained until the first of February and then went back to work on the 2nd and worked until the 8th of February and was again taken sick with an ear complication following the flu which required an operation and he remained in bed until the 28th day of February.

■■ The company, admitting that the plaintiff was a passenger upon its bus, attempts to justify its ejection of him upon a rule requiring the driver to eject all passengers who are sick and vomiting upon the bus upon the theory that the rule is reasonable because it was intended to conserve and protect the health of the passengers from disease or contagious infections. The trial judge would not permit the introduction of this rule in evidence and his action is assigned as error. The evidence shows that the driver did eject the plaintiff because he was sick and throwing up, and that this was not a sufficient reason in law for his ejectment since the passing of a rule by the company would add no weight to the reason for ejection other than to protect the employee from willful conduct, and he is not charged here with willful conduct.

■ The company cites and relies upon the case of Southeastern Greyhound Lines, Incorporated, v. Smith, 23 Tenn. App., 627, 136 S. W. (2d), 727, as authority for its right to adopt reasonable rules for the conduct of passengers for their own and the safety of others, and it must be conceded the company has this right when the rules are reasonable and tend to preserve the health and protect the safety of passengers. In the cited case the company has a rule requiring the driver to eject drunken passengers, and he ejected a boisterous, drunken passenger and the court, in sustaining the driver's action in enforcing the rule, held that the rule was reasonable.

■■ In this case the rule relied upon was either unreasonable in itself or was unreasonably enforced; it served only to relieve the company of its responsibility as a carrier for hire under its contract of carriage, and did not tend to promote or protect the health of the public or the passenger and is clearly unreasonable. There is no reason to eject a vomiting man from a street car to protect the passengers with the purpose of exposing him to the public in a public place of business, and the sick passenger's welfare was the first call to duty on the part of the driver, and he violated this duty by ejecting the passenger into the cold and abandoning him.

■ The company in ejecting the paid passenger under the circumstances shown clearly violated a contract of carriage and there is evidence to establish a liability upon the part of the company to the plaintiff. Southeastern Greyhound Lines, Incorporated, v. Freels (Tenn. Sup.), 144 S. W. (2d) 743. The difficulty confronting the

court·is the amount of the damages sustained by the plaintiff. There is no doubt but what he is entitled to nominal damages, and the expense of his cab fare and the loss of the value of his contract with the company, but the plaintiff insists that he was exposed in a sickened condition which injured his health, augmented his ailment, and for this he is entitled to a recovery. The trial judge and the jury took the view advanced by the plaintiff and granted him a recovery for the sum of $250. If the plaintiff was exposed to cold weather by the defendant and this exposure affected his health and augmented his ailment, he is entitled to recover for it provided he can trace it, that is the effect of his ailment or its augmentation to the exposure complained of. The contract of carriage includes ''the obligation to transport without injury, insult or indignity.'' Knoxville Traction Co. v. Lane, 103 Tenn., 376, 53 S. W., 557, 46 L. R. A., 549.

The plaintiff admits that he was sick before he was transferred to the bus from which he was ejected, and the medical evidence establishes that vomiting is a symptom of the onset of flu, and the warrant charges that the plaintiff was in a sick condition when he was ejected. At the time of the ejection he was exposed for fifteen or twenty seconds to the temperature of 14 degrees above zero. Before entering upon the bus he had walked a mile and a half from his home to the bus location and waited 8 or 10 minutes there upon the bus, in the same temperature, and for this exposure the bus was not responsible. He also was exposed for a few seconds when he left the taxicab and entered the Veterans' Hospital, and for this exposure the bus was not responsible. If the exposure to the cold affected his ailment, just which exposure did it? The medical testimony introduced by the plaintiff is that exposure of a man suffered with flu will do him no good, and we readily agree, but what the court is trying to determine is what harm did the exposure at the place of ejectment do, other than had been done at the place of entry. upon the bus, or at the place of leaving the taxicab? The defendant's medical testimony is that it takes an exposure of several minutes to affect a sick person and that a few seconds of exposure would have no appreciable effect upon his constitution or condition. This evidence is not directly disputed. But assuming it is in conflict with other medical testimony, there is no evidence to remove the injury from one of conjecture or guess. And the best guess would be that the exposure of 8 to 10 minutes where the passenger entered the bus affected his health, if we can assume that the exposure added anything to his flu ailment, rather than the short exposure at the place of the ejection. It is not permissible for the jury to speculate, and in the absence of some evidence indicating that the exposure at the place of ejection in fact injured the plaintiff, then it became a guess or conjecture as to which exposure caused the injury and if the exposure caused an injury augmenting the plaintiff's suffering from the flu. This ruling is intimated in the case of South-

eastern Greyhound Lines, Incorporated, v. Groves, 175 Tenn., 584, 136 S. W. (2d), 512, 127 A. L. R., 1378. We do not think the plaintiff has shown by substantial material evidence that the exposure in question (at the place of the ejection) affected his health or augmented his suffering. But since the plaintiff has established liability, then the question of the amount of his recovery is one of adequacy or excessiveness; the plaintiff is entitled to recover damages as compensation and any amount exceeding a fair compensation is necessarily excessive.

The plaintiff did not sue for punitive damage and the evidence would not support such a claim, since all the evidence is that there was no rudeness or oppression in ejecting plaintiff, and the idea of punitive damage must be excluded. Southeastern Greyhound Lines, Incorporated, v. Freels, supra.

The court finds that the verdict is excessive in the amount of $150 and suggests a remittitur of this amount, approving the verdict in the sum of $100 and the cost of the cause. If the remittitur is accepted, the judgment of the lower court is affirmed with costs.

McAmis and Ailor, JJ., concur.