SING et ux. v. HEADRICK et al.—236 S. W. (2d) 95.

Eastern Section. July 11, 1950.

Petition for Certiorari denied by Supreme Court, December 9, 1950.

Goddard & Gamble, of Maryville, for plaintiffs in error.

John C. Crawford and Dunn, Meares & Bird, all of Maryville, for Headrick.

D. H. Rosier, Jr., of Maryville, for Rudd.

HALE, J. The plaintiffs below, Sing and wife, prosecute this appeal in error from the action of the trial judge in sustaining motion for peremptory instructions at the close of plaintiff's proof.

Able counsel for the plaintiffs in error make the following statement of the substance of the declaration:

"* * * that the plaintiffs had purchased from the defendant Headrick and one C. R. Chambers a certain parcel of ground in the City of Maryville, which parcel of ground was described in the declaration; that said parcel of ground was purchased on or about February 8, 1947; that formerly said lot had sloped downward in a Southeast direction as did the lot adjacent to and immediately Northwest thereof; that before the purchase of said lot by the plaintiffs the defendant Headrick and his co-owner had graded the lot so that it was level or practically so, leaving a bank or slope along or near the line of the lot above described and the lot immediately Northwest thereof; that the lot immediately Northwest thereof was owned by the defendant Rudd; that the said defendant Headrick and his co-owner, while they owned said lot, had constructed or caused to be constructed a concrete or cinder block wall along but several feet from the Northwest line of said lot, which lot extended from the edge of Tennessee Avenue, upon which avenue said lot fronted, in a Westerly direction to a building located on said lot, and that said building had also been constructed by the defendant Headrick and his co-owner before they sold the lot to the plaintiffs and which building was near the rear of said lot but a few feet from the bank or slope above mentioned; that at the time plaintiffs purchased said lot they likewise became the owners of said wall and the said building, both of which

comprised a great portion of the value of the property; that they were therefore entitled to the benefit of such improvements and the benefit of continuing in ownership and possession without any hindrance or molestation from the defendants; that notwithstanding this right and after the purchase of said lot and improvements the defendants by themselves or through their agents and servants wilfully and negligently caused large quantities of dirt, rock and wood shavings to be hauled over the lot adjacent to plaintiff's property and dumped therein against the wall and the building above referred to, the weight from which broke and completely destroyed the wall above mentioned and pushed and forced the end of said building inwardly, greatly damaging and almost completely destroying the use of said building to the great damage of the plaintiffs; that the plaintiffs at great expense attempted to mitigate their damage by causing the wall of said building so pushed in to be re-enforced from the inside thereof by a thicker brick wall, which attempt was only partially successful, and that therefore the wrongful, wilful and negligent conduct of the defendants has left said wall completely destroyed and the building greatly and permanently damaged; the plaintiffs were and are without fault and negligence but that the damage to their property was the proximate result of the wilful, wrongful and negligent acts of the defendants. Wherefore the plaintiffs sued for Ten Thousand ($10,000.00) Dollars and demanded a jury to try the case.''

The case went to trial upon separate pleas of the general issue. Only two witnesses testified—the plaintiff John Sing and another who was familiar with the value of real estate. The learned and careful trial judge then

sustained motions for peremptory instructions of the defendants, holding:

"Gentlemen of the Jury, from the Plaintiff's testimony the Court holds that there was no wrongful action upon the part of the defendant, Roy Headrick, or upon the part of the defendant, Robert Rudd, even assuming that through their servants or employees or agents they did actually cause the dirt to be put there, the Court feeling that the plaintiff made no protest to having dirt placed there at the time Rudd requested it be done and at the time he conveyed Rudd's message to Headrick. The Court, therefore, feels that the plaintiff is now in no position to complain because the dirt was put in there under those circumstances. Now, the remaining question is whether the dirt was put in there in such a negligent way that it did in fact cause the damage complained of. The plaintiff testified that he does not know of his own knowledge what caused the wall to fall, whether the dirt caused it to fall or whether something else caused it to fall. As the Court sees the testimony, there is no proof that the dirt was negligently or carelessly put in there and no proof that the dirt caused the falling of the wall or the damage to the building. Certainly there is no proof that the dirt was negligently put in there.

"Although the Court is reluctant to take a case from the Jury, under the proof that has developed here, remembering that the plaintiff must prevail upon the strength of his own case, the Court feels that the plaintiff has failed to establish a case and the Court directs the Jury to return a verdict of not guilty."

The plaintiffs, by their motion for a new trial and assignments of error, assert two propositions:

(1) The action was in trespass, not trespass on the case, so that justification was not available as a defense under the general issue; and

(2) That, even though mistaken in the first proposition, there was evidence authorizing the submission of the case to the jury.

■ We proceed to consider these contentions in the order stated. The common law hair-splitting distinctions between trespass and trespass on the case, so far as the plaintiff was concerned, was abolished by Ch. 141, Acts 1849-50, Code, Sec. 8564, viz:

"All wrongs and injuries to the property and person, in which money only is demanded as damages, may be redressed by an action on the facts of the case. Penal actions may be brought in the same form."

■ However, the distinction must be recognized in the preparation of defensive pleadings. If the action is trespass affecting property, the plea of not guilty puts in issue two facts, the alleged wrongful act, and the title of the plaintiff, and under it the defendant may show he did not commit the act complained of, or, if he did, that plaintiff had no title to or interest in the property affected. If, however, the action be trespass on the case the plea of not guilty is much broader and allows any defense based upon the justice and equity of the case. Plowman v. Foster, 46 Tenn. 52; Raines v. Mercer, 165 Tenn. 415, 55 S. W (2d) 263; Oliver Co. v. A. Greenwood & Co., 4 Ct. Civil App. 535; History Lawsuit (5th Ed.) 188, 192; Tenn. Proc. (Higgins & Crown) Secs. 581, 582.

■ ■ The defendants sought to prove by the cross-examination of plaintiff Sing that he had consented to the placing of this dirt upon his premises, and the trial judge found he had done so, Objection was made, it

being asserted the declaration stated an action of trespass, so that justification was not available under the general issue.

The declaration does not charge an unlawful entry on plaintiff's premises, but says the defendants "wilfully and *negligently*" dumped the dirt, etc., against their house and wall, and that the resulting injuries were caused by the "wrongful, wilful and *negligent* conduct" of defendants. (Emphasis supplied.)

The failure to charge an unlawful entry coupled with the use of "negligent" impels us to conclude that the declaration stated trespass on the case. "An action of trespass presumes an active agency on the part of the wrongdoer in causing the injury, and the doing of an act wantonly or in total disregard of the other's right, while an action of trespass on the case assumes that the injury is the result of negligence or nonfeasance." 52 Am. Jur. "Trespass" Sec. 3, p. 837. Or, as was said by our beloved Justice Chambliss in Stagner v. Craig, 159 Tenn. 511, at page 515, 19 S. W. (2d) 234, at page 235, "It would seem that negligence, in whatever degree, is inconsistent with a deliberate intent."

It results that we think the evidence of justification was properly admitted under the plea of general issue.

 This brings us to the next question, i. e., the sufficiency of the evidence to take the case to the jury.

Plaintiffs owned a lot adjoining that of defendant Rudd. Upon their lot was built a concrete or cinder block house, within three or four feet of the Rudd line. From one side of this house there had been extended a concrete block wall paralleling the Rudd line, but three or four feet removed therefrom. This was was about six feet high, the lot of plaintiffs having been graded below

the level of the Rudd lot. This left an open space of some three or four feet in width and six feet in depth between the Rudd lot and plaintiff's house and wall.

Upon his examination in chief, Mr. Sing testified that Rudd said "he asked Headrick several times to bring the dirt and he agreed to bring it and Roy Headrick asked him if he would put the dirt in if he would shovel it and he said he agreed to do this, to level it off.

"What did Rudd say about what happened when they piled the dirt there?

"He said they dumped the dirt and he began to level it off and that he left it and went to the house when it began to bulge."

While being cross-examined by counsel for Headrick, he said:

"You did request Mr. Headrick to bring the dirt down there?

"I did not. I did not care anything about Rudd's property. It was not mine.

"You say you had talked to Headrick about bringing the dirt?

"Rudd wanted me to tell Headrick he wanted the dirt put in there. Rudd said he expected me or Headrick one to put the dirt there and I told him it wasn't my place to put any dirt there and I told him if he wanted me to carry Headrick a message I would tell him. I did not tell Headrick to or not to. I just told him what Rudd asked me to tell him.

"The dirt was going to be put on your land?

"Yes.

"Not any of the hole was on Rudd's land?

"It was not supposed to be.

"Mr. Headrick told you he would have some dirt sent down there?

"He said he would think about it. Said he did not remember whether he promised Rudd the dirt or not.

"And after that occasion he told you he had Barton deliver some dirt down there?

"I do not remember.

"You do not know who put the dirt against the wall?

"No.

"As a matter of fact, you do not know what caused the wall to fall.

"I suppose the dirt caused it to fall.

"But you do not know what caused it to fall.

"It could have been pulled down by a bulldozer. I was not there.

"When were you there, to the best of your knowledge?

"Within twenty-four hours."

Upon cross-examination by counsel for Rudd, he said:

"Mr. Sing, you wanted the dirt put in behind the wall?

"I did not care.

"You and Mr. Rudd discussed the matter several times?

"We did. He asked me or Headrick one to put the dirt there.

"The dirt was put in there with your permission, knowledge and consent?

"He did not have my permission, or consent, and I did not know he was going to do it.

"You discussed the matter with Mr. Rudd and Mr. Headrick?

"Mr. Homer A. Goddard: We object to that because there is no plea of justification. It is incompetent and immaterial.

"The Court: Objection overruled.

"Mr. Homer A. Goddard: We except.

"You knew the dirt was going to be put in there?

"I did not know whether Headrick was going to have the dirt put in there or not.

"You asked him to put it in there.

"I did not.

"You conveyed Mr. Rudd's message?

"I carried the message from Rudd to Headrick that Rudd wanted the dirt."

From this quoted testimony we think the only conclusion that reasonable men could draw is that it was to the mutual interest of the plaintiffs and Rudd that this space along the Rudd line be filled; that when Mr. Sing carried word from Rudd to Headrick he knew the dirt, etc., was to be placed on his land, and thereby assented thereto; that there is no evidence whatever of negligence on the part of either of the defendants on the way and manner in which the work was done; that the house and wall, unknown to plaintiffs or defendants, was not sufficiently strong to stand the pressure of this additional material, thus causing the damages in question. Although it is to be regretted that the plaintiffs suffered this loss, we are unable to find any evidence to carry the case to the jury. Where the evidence is susceptible of but one inference, the question is one of law for the court. Moody v. Gulf Refining Co., 142 Tenn. 280, 218 S. W. 817, 8 A. L. R. 1243; Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15.

The judgment below is affirmed at cost of plaintiffs in error and sureties.