WILLIE JAMES LITTLE, McKINLEY VAN ARS-
DALE, ELBERT HURST, HAROLD WILLIAMS,
Plaintiffs in Error, v. NASHVILLE, CHATTANOOGA
AND ST. LOUIS RAILWAY CO., Defendant in Error.
—281 S. W. (2d) 284.

Western Division at Jackson. November 22, 1954.

Petition for Certiorari denied by Supreme Court March 11, 1955.

Russell Rice, and J. L. Harrington, both of Jackson, for plaintiffs in error.

Moss & Benton, of Jackson, for defendant in error.

BEJACH, J. The parties will be styled as in the lower court, plaintiffs and defendant; the plaintiffs being the plaintiffs in error in this Court and the defendant, the defendant in error here. This case involves the appeals of four individual plaintiffs, all of whose suits arose out of the same accident, and whose suits against the defendant Railway Company were all consolidated and heard together. One bill of exceptions and one assignment of

errors was filed on behalf of all four in this Court. All of the plaintiffs, except Harold Williams, sued for personal injuries received in the accident, and he sued for damage to his truck in which the other three plaintiffs were riding at the time of the accident.

Each plaintiff sued the defendant in four counts. The first count alleged common law negligence, in that the defendant operated its train at a high rate of speed over a crossing which was known to the defendant to be highly dangerous; that the crossing was in such a dangerous condition because of an obstruction permitted to exist upon the right of way of defendant; that the train of defendant was being operated without a proper lookout ahead being maintained; that no whistle or bell signal was given to warn the traveling public of the approach of the train to the John Williams road crossing; that the defendant's crew members failed to observe the plaintiffs in a position of peril when said plaintiffs could be so observed; and that said defendant's servants and agents failed to apply the brakes and sound the alarm whistle and to do all in their power to stop the train after said plaintiffs were observed to be in a position of peril. The second count of each declaration alleged a negligent failure on the part of the defendant to observe Subsection (2), Section 2628 of the Code of Tennessee, in that said defendant failed to blow the whistle or ring the bell on the locomotive as the train approached the John Williams road crossing. The third count of each declaration alleged a negligent failure on the part of the defendant's crew to comply with Subsection (4), Section 2628 of the Code of Tennessee, in that said defendant failed to have anyone on the lookout ahead of said train; that if a lookout was being maintained, said lookout failed to see the plain-

tiffs in a position of peril when they should have been so seen; that the plaintiffs were an obstruction upon said road, and that the defendant's agents and servants failed to sound the alarm whistle, put down the brakes and use every possible means to stop the train and prevent the accident. The fourth count in each declaration alleged a negligent violation on the part of the defendant of Section 2657 of the Code of Tennessee, in that said Company negligently failed to keep the crossing at the John Williams road in a lawful repair as required by said Section.

To all of these declarations, the defendant filed pleas of not guilty and contributory negligence.

At the end of the plaintiffs' proof, the defendant filed motions for peremptory instructions to the jury which were overruled. Said motions for peremptory instructions were renewed at the end of all the proof, at which time the Court sustained the motion in each of these cases on the statutory counts, but overruled them on the common law counts. The exact language of the Court as reflected in the bill of exceptions is as follows:

"The Court: (At the conclusion of argument on the motion) The motion will be sustained in each of these cases on the statutory counts; it is overruled on the common law counts."

After the charge of the trial judge, no exception to which is taken by the assignments of error in this Court, the jury returned a verdict in favor of the defendant. After a motion for a new trial had been overruled, the plaintiffs filed their bill of exceptions and perfected an appeal in the nature of a writ of error in each of the four cases, one bill of exceptions being filed for all four cases.

The facts of the case as appears from the testimony

of the witnesses, with reference to which there is very little conflict, were as follows:

Plaintiff, Willie James Little, testified that the three plaintiffs, Little, Hurst and Van Arsdale, were riding in a truck belonging to the plaintiff, Harold Williams, which truck was being driven by Willie James Little. The truck turned south on a road in Madison County, known as the John Williams road, towards the N., C. & St. L. right of way, across which the tracks run east and west. The John Williams road from Chester Street in Jackson, all the way up to the railway track, was extremely muddy and the truck approached the track at a speed of about five miles per hour and in a low gear, because of the condition of the road, which was rough, muddy and slick. The road was uphill towards the track, and the driver, Little, was having trouble getting up the hill with the truck because of sliding and slipping, and he was going about as slow as he could go and still make progress. The plaintiff, Little, testified that as he approached the track, the windows on his truck were down, and that he listened for a train and heard neither whistle nor bell, and that he would have heard it if it had been blown,—that as he approached the track, he looked first to the right when at a distance of twenty feet from the first rail, and saw no train; that he could not see until within twenty feet of said track, and that when he looked to the right, he saw no train; that the road was so muddy right up to the rail, and he was having trouble getting up to the track, and that the truck was taking his attention, and he never did see the train until it hit him.

The testimony of Little is corroborated by the testimony of Van Arsdale and Hurst, which is to the same effect as that of Little.

Mr. John Williams, owner of the John Williams Steel Company, and for whom the road upon which the accident occurred is named, testified that he had lived on the John Williams road about thirty years; that he is no relation of the plaintiff, Harold Williams; that the road leads to a small community and is the only route to Chester Street in Jackson, for which it is commonly used; that a person going south on the John Williams road had to be within twenty-five or thirty feet of the track to have a view of 400 feet to the right, and that to have an unlimited view, you had to be within ten feet of the track; that there is a 14 foot deep cut west of the road to block the view of an approaching train; that this cut is 4 or 5 feet high right at the crossing and tapers up to 14 feet; and that the cut is on the railroad property.

Plaintiff, Harold Williams, testified that he drove over the road in question, the afternoon following the accident, —a few hours after same had occurred;—that it was muddy and slippery from Chester Street to the track.

It is unnecessary to quote the testimony of the plaintiffs' other witnesses.

The engineer of defendant's train, Mr. C. B. Morris, testified that as he approached the John Williams road crossing, his train was making between 52 and 55 miles per hour, which was as fast as he could go; and when very close to the crossing, his fireman said, "Keep blowing", and that he assumed the fireman had seen something coming, and that he continued to blow until the fireman hollaed "Stop" or "Shoot her"; that he was about 100 feet from the crossing at the time the fireman called "Stop", or, "Shoot her"; that at that time, he was making a speed of between 52 to 55 miles an hour; that he was not very far from the crossing when the fire-

man told him to "Keep blowing", and that it was not over 100 feet from the crossing; that it was shortly after that, that the fireman told him to "Shoot her", at which time he ceased blowing and went for the brake. He testified further that this truck could have been seen by the fireman for a distance of 200 to 250 feet west of the road; that his train was light and that his brakes in emergency would slow him perceptibly in 200 feet; that it is not customary for a fireman to holla "Keep blowing", except when someone is in a position of danger; that if the fireman had hollaed "Stop", or, "Shoot it" at the 100 foot distance instead of "Keep blowing", he could have had the speed of the train pulled down "Right smart" before reaching the road; that the front of his engine hit the truck in the "engine part"; and that he never did see the truck.

Mr. M. L. Brown testified for the defendant,—that he observed the accident; that the train was running about 40 miles an hour; that the truck was running about six miles an hour; that he saw the actual impact; that the train hit the truck right over the right front fender of the truck; that he had worked on the water line in the vicinity of this crossing for some time, and that at the time of this accident, the conditions shown in defendant's exhibit number 8, did not prevail.

The fireman, O. B. Caneer, testified that the train approached the John Williams road at a speed of 50 miles per hour; that he saw the truck when the train was "200 feet" from the crossing, and that the truck was 75 feet from the rails at this time and moving "very slowly"; that he had a clear view of the truck at 200 feet and could even see behind it; that there was nothing to block his view of the truck until he got within 200 feet and that he

might have seen it, but did not; that he was not looking for a truck before getting within 200 feet of the crossing; that he observed the truck making an uninterrupted approach to the track without slowing down or speeding up and at a continuous speed; that he did not decide the truck was not going to stop until "he drove on up there almost on the track, just right at the track, then is when I holloaed at the engineer. I seen he was going on across"; that he was positive the train was going 50 miles an hour at 200 feet from the crossing; that the cut obstructed his view of the truck until within 200 feet of the crossing, and that 200 feet was as soon as he could see the truck; that from 400 to 500 feet, all that could be seen of the John Williams road, was the part that crossed the rails; that he holloaed at the engineer when the nose of the train was within 10 feet of John Williams road crossing; and that the truck was actually in the path of the train; that the train could not pass without striking that truck at this time; that if he had holloaed "Stop" at the time he saw the truck from 200 feet away, the brakes could have been applied and the truck could have gotten across safely.

One other witness, Mr. Don Masner, testified for the defendant, that he observed the wreck; that the truck got in front of the train and was hit in the side about 18 inches in front of the windshield.

Plaintiffs, as appellants, have assigned seven errors in this Court. It is not necessary to copy these in this opinion, nor to discuss them separately at any length. They present only two questions, or at most, three, for disposition by this Court. These questions are:

1. Whether or not the trial judge erred in sustaining the motion for a peremptory instruction on the statutory

counts, to all of which action the plaintiffs duly excepted.

2. Whether or not the trial judge erred in directing a verdict for the defendant as to count number 4 of the plaintiffs' declarations. This assignment evidently assumes that count number 4 was included along with count number 2 and count number 3, in the peremptory instruction granted by the trial judge on the statutory counts. If so, it would be covered by that part of this opinion disposing of question number 1, and would not constitute a separate question. It is the opinion of this Court, however, that it was not so included and it is therefore separately discussed as question number 2.

3. Whether or not it was error for the trial judge to permit the defendant, over the objection of plaintiffs to introduce defendant's exhibit number 8, which exhibit was a staged photograph made at a different season of the year from that in which the accident occurred.

(1) The first question thus presented has to do with what is known as the Statutory Precautions Act applicable to railroads.

This Act is found in Section 2628 of the Code of Tennessee, which is as follows:

"2628 1574 (1166). Accidents on railroads, precautions to prevent.—In order to prevent accidents upon railroads, the following precautions shall be observed:

"(1) Public road crossing signal.—The overseers of every public road crossed by a railroad shall place at each crossing a sign marked as provided by section 2659, below; and the county court shall appropriate money to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle

or ring the bell at any crossing, unless it is so designated. (1855-56, ch. 94, secs. 6, 7.)

"(2) Whistle or bell to be sounded.—On approaching every crossing so distinguished, the whistle or bell of the locomotive shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing. (Ib., secs. 1, 5.)

"(3) Bell or whistle to be sounded when approaching or leaving a city or town.—On approaching a city or town, the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals till it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when the train starts, and at intervals till it has left the corporate limits. (Ib., sec. 5.)

"(4) Lookout ahead; alarm whistle to be sounded, and all means employed to stop train, when.—Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident. (Ib., sec. 8; 1857-58, ch. 44, sec. 3.)

"(5) Light to be placed on rear of engine, tank, or tender while backing in the night; fine for violating.—It shall be unlawful for any person operating a railroad to use road engines without having same equipped with an electric light placed on the rear of the engine, tank, or tender, which light shall be a bull's eye lense of not less than four inches in

diameter with a bulb of not less than sixty watts power, so that such road engine can be operated with safety when backing and said light so placed shall be burning while any such engine may be used in any backing movement. Such lights shall be operated at night; and any person violating any of these provisions shall be fined the sum of not less than twenty-five dollars, and not more than one hundred dollars, for each offense. (1923, ch. 133, Modified.)''

The only provisions of this Act which could be applicable to the facts of the instant case are contained in subsections (2) and (4) of the above quoted statute carried forward into the Code as Section 2628. These have to do with the sounding of the whistle and bell on the locomotive; and with putting the brakes down and employing every possible means to stop the train to prevent an accident.

 The common law and the statutory causes of action for personal injuries on a railroad crossing may both exist in the same case, but it is required that they shall each be presented in separate counts. Middle Tennessee R. Co. v. McMillan, 134 Tenn. 490, 184 S. W. 20. Violation of the Statutory Precautions Act is thus made a separate and distinct cause of action; and it has been held that under a count charging common law negligence, evidence of noncompliance with the Statute is inadmissible. Chesapeake & N. R. Co. v. Crews, 118 Tenn. 52, 99 S. W. 368. The Statute is imperative and the breach of it gives a right of action for injuries inflicted on the occasion, whether the nonobservance of the Statute was the proximate cause of the accident or not. Illinois Cent. R. Co. v. Davis, 104 Tenn. 442, 58 S. W. 296; Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 148 S. W. 239.

■ It constitutes no defense to prove that the accident and injury would have occurred, even if the precautions had been observed. Chattanooga Rapid Transit Co. v. Walton, 105 Tenn. 415, 58 S. W. 737; Southern R. Co. v. Brooks, 125 Tenn. 260, 143 S. W. 62; Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 148 S. W. 239; Tennessee Cent. R. Co. v. Morgan, 132 Tenn. 1, 175 S. W. 1148. And even contributory negligence on the part of the injured person is not a complete defense, though it goes in mitigation of damages. Louisville & N. R. Co. v. Truett, 6 Cir., 111 F. 876; Rogers v. Cincinnati, N. O., etc., R. Co., 6 Cir., 136 F. 573; Southern R. Co. v. Koger, 6 Cir., 219 F. 702; Southern Ry. Co. v. Brubeck, 6 Tenn. App. 493.

■ It has, therefore, long been recognized in Tennessee jurisprudence that the right of action created by the Statutory Precautions Act, referred to above, and the right of action which may exist at common law, are two separate and distinct causes of action.

With reference to the Statutory Precautions Act, there are, of course, many nice distinctions and situations where the Statute is held inapplicable. There are also many instances where, whether or not the Statutory Precautions Act has been complied with, the trial court must submit as a question of fact for the jury. In the instant case, both the brief of appellant and that of the appellee cite many authorities on the question of whether the Statutory Precautions Act in question should or should not be held applicable to the facts of the instant case; and as to whether or not facts with reference thereto should have been submitted to the jury for determination. The appellant's brief, of course, cites those cases which tend to support his contention, that the Statute should be held applicable, and that the questions of fact should

have been submitted to the jury; while that of the appellee, naturally, takes the opposite view and cites the cases leaning in the opposite direction. It is unnecessary for this opinion, however, to analyze and differentiate these cases, nor is it necessary to distinguish the facts of same from the facts of the instant case. It is sufficient for the purpose of this opinion simply to point out that according to the express language of the Statute in question, it is not applicable in the instant case.

Subsection (1) of the Code Section 2628, provides:

"The overseers of every public road crossed by a railroad shall place at each crossing a sign, marked as provided by section 2659, below; and the county court shall appropriate money· to defray the expenses of said signs; and no engine driver shall be compelled to blow the whistle or ring the bell at any crossing, unless it is so designated."

■ The burden of proof is upon the plaintiff to prove that a public crossing has been designated as such by the statutory danger signals; but when plaintiff has proved this fact, the burden is upon the railroad company to prove that the bell and whistle were sounded as prescribed by the Statute, upon approaching such crossing. Alabama Great Southern R. Co. v. McDonough, 97 Tenn. 255, 37 S. W. 15; Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 148 S. W. 239.

■ In the instant case, not only is there no evidence tending to show that the crossing where the accident involved in this case occurred was designated as required by the Statute quoted above; but at the argument of this case in this Court, plaintiffs' attorney conceded that the crossing in question, was not so designated.

It follows that the assignments of error raising the question as to the correctness of the trial judge's ruling

in granting motion for peremptory instruction on the statutory counts must be overruled.

(2) Evidently plaintiffs' attorneys were of opinion that violation of Code section 2657, which requires railroad companies to keep crossings in a proper state of repair, subjected the railroad company to the same penalties as for violation of the provisions of Code section 2628; and that it was necessary to charge such violation by the railroad company in a separate count of the declaration, just as it was necessary to charge, in one or more separate counts of the declaration, violations of the various subsections of Section 2628 of the Code. We do not agree that this is a correct view of the law. Section 2628 was carried forward into the Code of 1858 from chapter 94 of the Acts of 1855 and 1856, and from the Code of 1858 into section 2628 of the 1932 Code. Subsections 2, 3 and 4 were carried forward into the Code of 1932 from the same source and, in part, from chapter 44, Acts of 1857-58. Subsection 5 is from chapter 133, Acts of 1923, modified. Section 2657 of the Code, on the other hand, is taken from chapter 119, Acts of 1889. Obviously, it was not enacted as an amendment to the Statutory Precautions Act contained in Code Section 2628, or as originally enacted, in the statutes from which said Code section was compiled. Code section 2657, therefore, did not create a new and distinct cause of action, as did section 2628. Violation of this Statute by a railroad company presents not an additional cause of action in favor of any person injured by reason of its violation, but merely an additional ground of negligence, resulting from such violation.

It is well settled that a failure to perform a statutory duty or duty imposed by ordinance is negligence per

se, and if the injury is the proximate result or consequence of the negligent act, there is liability. 2 Thomp. on Negligence, p. 1232, sec. 5; Wise v. Morgan, 101 Tenn. 273, 48 S. W. 971, 44 L. R. A. 548; Queen v. Dayton Coal & Iron Co., 95 Tenn. 458, 32 S. W. 460, 30 L. R. A. 82; Riden v. Grimm Bros., 97 Tenn. 220, 223, 36 S. W. 1097, 35 L. R. A. 587; Memphis St. R. Co. v. Haynes, 112 Tenn. 712, 81 S. W. 374; Stearns v. Williams, 12 Tenn. App. 427; Carroll Blake Const. Co. v. Boyle, 140 Tenn. 166, 203 S. W. 945; Donaho v. Large, 25 Tenn. App. 433, 439, 158 S. W. (2d) 447.

The allegations of count 4 of plaintiffs' declarations could have been included in and along with those made in count 1 without making that count demurrable, whereas a similar inclusion of the allegations of either count 2 or count 3 would have rendered it subject to demurrer for duplicity. Middle Tennessee R. Co. v. McMillan, 134 Tenn. 490, 184 S. W. 20.

 It is therefore our opinion that when the trial court sustained the motion for a peremptory instruction, in each of these cases, "on the statutory counts", but overruled such motion "on the common law counts", of the declarations, that the fourth count of plaintiffs' declarations, along with the first count of said declarations was submitted to the jury; and the verdict of the jury, being in favor of the defendant and approved by the trial judge, the matter is foreclosed so far as this Court is concerned. The verdict thus approved by the trial judge was general in its character and must, therefore, be applied to any count of the declaration which there is sufficient evidence to sustain. Tennessee Cent. R. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452.

The result reached in the present litigation is in harmony with the recent decision of the Supreme Court of

this state in the case of Powers v. Louisville & N. R. Co., 183 Tenn. 526, 194 S. W. (2d) 241. The facts of that case presented a situation which was the converse of that presented by the instant case. The jury in that case had returned a verdict in favor of the plaintiff, whereas in the instant case, the jury's verdict was in favor of the defendant. We think the rule should be the same in both cases. In the Powers case, in the opinion written for the Supreme Court by Mr. Justice Gailor, the following language appears:

"We think this case presents no more than factual questions of negligence and contributory negligence upon which there has been a concurrence by the jury, the trial judge and the court of appeals. No rule is more firmly established in Tennessee than that such concurrence, if supported by material evidence, is binding on this Court.

"In the declaration it was alleged that defendant was guilty of negligence in failing to maintain the crossing in accord with the duty laid upon it by secs. 2657-2660 of the Code. These sections apply to all 'public road (crossings),' and impose a duty wholly separate from and independent of duties imposed at 'designated crossings' under sec. 2628 of the Code. It is, therefore, immaterial to the result whether the railroad was also guilty of neglect of its duties under sec. 2628, since we find that the verdict of the jury, so far as negligence of the railroad is concerned, is supported by abundant evidence that the railroad was guilty of negligence under secs. 2657-2660 of the Code. Tennessee Cent. R. Co. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452; sec. 8824."

Powers v. Louisville & N. R. Co., 183 Tenn. 526, 528-529, 194 S. W. (2d) 241, 242.

 Even if the fourth count of the declaration which alleges violation of Section 2657 of the Code be not treated as a common law count of the declaration, and thereby excluded from the trial judge's peremptory instructions and included in the jury's verdict, we think the result should be the same. There is no dispute or conflict in the evidence as to the situation with reference to the railroad crossing. Where there is no conflict in the evidence as to any material facts, there is nothing for the jury to find, and the question then becomes one of law for the Court. The law in Tennessee is well settled that in such cases the trial judge may sustain a motion for peremptory instruction and take the case from the jury. Ward v. Southern R. Co., 15 Tenn. App. 380; Tennessee Electric Power Co. v. Van Dodson, 14 Tenn. App. 54; Stafford v. Consolidated Bus Lines, 179 Tenn. 185, 164 S. W. (2d) 15; Mayor and Aldermen of City of Knoxville v. Cain, 128 Tenn. 250, 159 S. W. 1084, 48 L. R. A., N. S., 628; Southeastern Greyhound Lines v. Smith, 23 Tenn. App. 627, 136 S. W. (2d) 727; Hill v. Castner-Knott Dry Goods Co., 25 Tenn. App. 230, 166 S. W. (2d) 638; Schindler v. Southern Coach Lines, 188 Tenn. 169, 217 S. W. (2d) 775; Sing v. Headrick, 34 Tenn. App. 187, 236 S. W. (2d) 95.

If count 4 of the plaintiffs' declaration in this cause be considered as having been included in the trial judge's peremptory instruction to the jury, his ruling could very well have been predicated upon the view that even if the railroad crossing was not kept in proper repair as provided for in Sections 2657-2658 of the Tenn. Code, the violation of these sections was not the proximate cause

of the injuries to plaintiffs. Even on that basis, we see no reason to disagree with the ruling of the trial judge, and same is affirmed. The assignments of error raising this question are overruled.

(3) The last question raised by the assignments of error in this Court challenges the correctness of the trial judge's ruling in admitting in evidence a photograph taken at a different season from the season of the year at which the accident involved in this cause occurred. This objection is based upon the contention that as the accident occurred in the springtime when shrubbery had already grown up, whereas the photograph admitted over the objection of the plaintiffs was taken in the wintertime when there was no such shrubbery, the conditions were not the same, and that the difference was misleading to the jury.

The general rule is that photographs stand on the same footing as diagrams, maps or models, and rest to some extent on the credibility of the witness introducing them. They must be shown to be faithful representations of the place or subject, substantially as it existed at the time involved in the controversy. When so shown and duly verified, the law is settled that photographs are permissible as aids to the jury in arriving at an understanding of the evidence, or of the situation or condition or location of objects or premises, material or relevant to the issues. Jackson v. City of Nashville, 17 Tenn. App. 413, 418, 68 S. W. (2d) 137; Radnor Water Co. v. Draughon, 19 Tenn. App. 371, 89 S. W. (2d) 186; Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613. We have compared defendant's exhibit number 8, the one objected to, with plaintiffs' exhibit number 5, which plaintiffs concede is a correct reflection of the situation at the scene

of the accident; and we cannot say that there is enough difference between the two exhibits to make the admission of the defendant's exhibit reversible error. In any event, the reversal on that ground would, in the opinion of this Court, violate Section 10,654 of the Code of Tennessee which provides:

"No verdict or judgment shall be set aside or new trial granted by any appellate court, in any civil or criminal cause, on the ground of error in the charge of the judge to the jury, or on account of the improper admission or rejection of evidence, or for error in acting on any pleading, demurrer, or indictment, or for any error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

On the entire record in this cause, we are satisfied that there was ample evidence to justify the verdict of the jury on the common law right of action involved in these consolidated causes; that the granting of the motion for peremptory instructions on the counts involving the Statutory Precautions Act was correct; and that there was no reversible error in the admission of testimony at the trial. The judgment of the trial court is, accordingly, in all things affirmed. The costs of the appeal will be paid by the appellants and the sureties on the appeal bond of the appellant, Harold Williams.

Avery, P. J. (W. S.), and Carney, J., concur.