RADNOR WATER CO., INC., v. DRAUGHON.

SAME v. HUNTER.—89 S. W. (2d) 186.

Middle Section.   March 30, 1935.

Petition for Certiorari denied by Supreme Court, January 11, 1936.

Seay, Stockell & Edwards, of Nashville, for plaintiff in error Water Company.

Walker & Hooker and Pitts, McConnico, Hatcher & Waller, all of Nashville, for defendants in error Mrs. Draughon and Mrs. Hunter.

CROWNOVER, J. These two actions for damages were tried together, as they arose out of the same accident.

The actions of Mrs. Draughon against the water company and Mrs. Hunter against the water company were for damages for personal injuries sustained when Mrs. Hunter's car, driven by her, in which Mrs. Draughon was riding as a guest, skidded on a highway on which the water company had left clay while excavating

at the side of the highway to lay water pipes, and rain had fallen, making the highway dangerously slippery—a condition which should have been anticipated by the water company.

The defendant pleaded not guilty in each case.

The cases were tried by the judge and a jury. At the close of plaintiffs' evidence, and again at the conclusion of all the evidence, defendant moved the court for a directed verdict in its favor in each case, which motions were overruled. The jury returned verdicts of $10,000 for Mrs. Draughon and $500 for Mrs. Hunter, and judgments were entered.

Motions for new trials having been overruled, defendant appealed in error in each case to this court, and assigned errors, which are in substance as follows:

(1) There is no evidence to support the verdicts, and the court erred in overruling defendant's motions to direct a verdict in its favor in each case.

(2) The court erred in charging the jury as follows:

(A) "The duty of the defendant under the circumstances shown in this proof, as they undertook to remove the dirt from the road, was to exercise reasonable and ordinary care in an effort to free the highway from any particles of dirt or clay that might in wet weather cause a nuisance, or make the road more dangerous than it otherwise would be at a given point; if the defendant in clearing the dirt from this road, did exercise ordinary care, that is, if it removed or caused to be removed such dirt or clay as it placed upon this highway in the manner that is usual, proper and ordinary under such circumstances, although it might have left a particle or two on the road, would not in and of itself be sufficient to create liability under the circumstances just because there was some dirt left on the road, unless you should find that the quantity or the particular place where the dirt was left was such that a person in the exercise of ordinary care would realize or have a reason to anticipate that the leaving of this dirt or clay at that particular place would result in an accident such as this one, or might result in accidents such as this is shown to be. . . ."

(B) "Now if you should find that this defendant did not remove all the dirt from the highway, or that it negligently left dirt upon the highway at the point where this accident is said to have occurred, dirt that it could have removed, or that a person in the exercise of ordinary care would have removed or might have anticipated that an accident such as this would have resulted, then I charge you that the defendant under those circumstances would be liable. . . ."

(C) "I further charge you, Gentlemen of the jury, that if it rained for some hours the day this accident occurred and immediately before and at the time of the accident, and if Mrs.

Hunter and Mrs. Draughon were familiar with the fact that there were loose particles of dirt on the highway resulting from the progress of the work which they had observed in passing by the place, which in the nature of things would cause same to become slippery, it was the duty of both of them to have been mindful of this fact and to have done what a reasonably prudent person would be expected to do under the circumstances to have avoided the accident, as the result of skidding on said highway, and if both of them could have avoided the accident in the exercise of ordinary care, but failed to do so, neither of them could recover.

"I charge you that with this qualification, heretofore explained to you, I add to that request this:

"Provided their failure to exercise this care was the direct and proximate cause of the injury they received."

(3) The verdicts are excessive.

The defendant, the Radnor Water Company, Inc., some time in 1932, made a contract with the commissioner of the department of public institutions of Tennessee to lay an eight-inch water main along the Antioch turnpike, otherwise known as the Mill Creek Valley road, from its intersection with the Nolensville road to Bakertown, thence extending to certain property of the state of Tennessee, to furnish water to certain state institutions.

It was a part of the contract that the labor should be performed by the state convicts.

Antioch pike is an asphalt road with a crown; that is, high in the middle and sloping to each side. The paved portion is about 16 or 18 feet wide, wide enough for two cars to pass each other.

The ditch for the water pipe was dug along the right side of Antioch pike, going south, or southeast, from the Nolensville road, about 3 feet from the pavement, and was about 40 to 54 inches deep. The dirt and clay removed from the ditch was thrown to the left of the ditch on to the right side of the pavement. Some of the dirt was black dirt and some red clay. In some places almost half the pavement was covered with it.

Mrs. Hunter lives on the Antioch pike 5 or 6 miles from its intersection with the Nolensville road. Mrs. Draughon is a stepdaughter of Mrs. Hunter, and lives in Nashville.

Mr. G. R. Turbeville lived on the Antioch pike on the right going out, about one-half mile from the Nolensville road.

This accident occurred on April 7, 1932. at about 4:45 p. m., in front of the house occupied by G. R. Turbeville.

It appears that the part of the ditch in front of Turbeville's was filled that morning or the day before, that red clay had been dug there and thrown on the highway, and that, after the ditch was filled a quantity of clay, some of it in large lumps was left scattered over that paved part of the highway, lumps as large as a goose egg.

It seems that the ditch from the Nolensville road to the beginning of Turbeville's place had been filled some time previously, and that very little red clay had been excavated and thrown on the highway, but there was some in spots.

At about 3:40 on the afternoon of April 7, 1932, it began to drizzle rain. At about 4:45 Mrs. Hunter, returning to her home and driving her automobile at a speed of 20 miles an hour, drove on to the Antioch pike. She was accompanied by her stepdaughter, plaintiff, Mrs. Draughon. She noticed the highway was slick and slowed down to a low rate of speed.

In front of the Turbeville place the rain had reduced the clay to mud, which covered the highway, making it very slick. The road at this point is somewhat down grade. As they reached the Turbeville place, Mrs. Draughon cried out to Mrs. Hunter to be careful. The automobile began to skid, did not respond to Mrs. Hunter's efforts to steer it, and ran off of the road into a telegraph pole, injuring Mrs. Hunter and inflicting very serious and painful injuries upon Mrs. Daughon.

1. The testimony for the defendant water company was that, after the ditch was filled, the road was scraped off with shovels, which was the usual and customary way of cleaning up a road after excavating. Witnesses for defendant testified that there was no clay or dirt left on the paved part of the highway, but evidently the jury believed the plaintiffs' witnesses, who testified that the road was left in such condition as to become dangerously slick when rain fell, as hereinabove described.

One witness for defendant stated that at a point 150 yards from Turbeville's place Mrs. Hunter could have seen the surface of the highway for 3,000 feet, as it sloped down grade. The effect of this testimony is that Mrs. Hunter could have seen the surface of the road in front of Turbeville's place when about 150 yards away. Mrs. Hunter testified that she had lessened her speed considerably. Evidently the jury thought she was already driving slowly when she observed the condition in front of Turbeville's place. This question of the contributory negligence of Mrs. Hunter and Mrs. Draughon was for the jury.

Defendant also insists that mud was tracked on to the road. But it was shown by plaintiffs' witnesses that there were no driveways between Nolensville road and Turbeville's place, and the Turbeville driveway had been covered with rock, so clay could not have been tracked on to the paved road.

The jury having found that the highway was left in such condition that such an accident should have been anticipated by defendant, and that Mrs. Hunter's and Mrs. Draughon's negligence did not contribute to the accident, this assignment of error must be overruled.

■ The water company was bound, after completion of the work, to restore the highway to a condition of reasonable safety. 29 C. J., 679, section 442; Reinauer v. Hackensack Water Co., 92 N. J. Law, 8, 105 A., 15.

"The jury may find that rain which rendered a newly oiled street dangerous for travel should have been anticipated by the municipality and its effect guarded against by warning, sanding, or otherwise." Kelleher v. Newburyport, 227 Mass., 462, 116 N. E., 806, L. R. A., 1917F, 710.

■ ■ 2. We are of the opinion that there was no error in the court's charge.

(A) The court charged the jury:

"The duty of the defendant under the circumstances shown in this proof, as they undertook to remove the dirt from the road, was to exercise reasonable and ordinary care in an effort to free the highway from any particles of dirt or clay that might in wet weather cause a nuisance or make the road more dangerous than it otherwise would be at a given point; if the defendant in clearing the dirt from this road did exercise ordinary care, that is, if it removed or caused to be removed such dirt or clay as it placed upon this highway in the manner that is usual, proper and ordinary under such circumstances, although it might have left a particle or two on the road, would not in and of itself be sufficient to create liability under the circumstances just because there was some dirt left on the road, unless you should find that the quantity or the particular place where the dirt was left was such that a person in the exercise of ordinary care would realize or have a reason to anticipate that the leaving of his dirt or clay at that particular place would result in an accident such as this one, or might result in accidents such as this is shown to be."

It was insisted that by this charge the jury was in effect told that a particle or two of dirt, if left in the roadway, would not render the defendant liable unless left in such a place that a person in the exercise of ordinary care would realize that such an accident might result therefrom; that, in other words, under this charge of the court, liability might be predicated either (a) upon the quantity of dirt, or (b) upon the particular place, without reference to quantity and without reference to whether it was even only a particle or two; that this charge placed too. high a responsibility upon the defendant; that it suggests that, if more than a particle or two of dirt was left in the roadway by the defendant. this would constitute actionable negligence, and that even the smallest quantity of dirt left on the roadway would constitute negligence, if the particular place was such that injury might result.

(B) The court also charged the jury:

"Now if you should find that this defendant did not remove all

the dirt from the highway, or that it negligently left dirt upon the highway at the point where this accident is said to have occurred, dirt that it could have removed, or that a person in the exercise of ordinary care would have removed or might have anticipated that an accident such as this would have resulted, then I charge you that the defendant under those circumstances would be liable.''

It was insisted that this charge unquestionably fixed too high a responsibility upon the defendant, making the defendant liable, in effect, if it did not remove all of the dirt from the highway or if it did not remove from the highway all of the dirt that could have been removed therefrom; that, in other words, this charge of the court required the jury to find the defendant absolutely liable, if there was anything that the defendant could have done that would have removed more dirt from the highway than was removed, and in this respect it required of the defendant more than ·ordinary care and fixed absolute liability upon the defendant, unless every particle of dirt had been removed from the highway that it was possible to have removed; that it, in effect, told the jury that, if the defendant did not remove, before this accident, from the highway every particle of dirt that it (the defendant) could have removed, it was unnecessary for the jury to inquire further as to whether there would be negligence; that they were charged that would render the defendant liable and it would be their duty to return a verdict against the defendant in both· cases.

(C) The court was requested to charge defendant's special request No. 3, as follows:

''I further charge you, gentlemen of the jury, that if it rained for some hours the day this accident occurred and immediately before and at the time of the accident, and if Mrs.·Hunter and Mrs. Draughon were familiar with the fact that there were loose particles of dirt on the highway resulting from the progress of the work which they had observed in passing by the place, which in the nature of things would cause same to become slippery, it was the duty of both of them to have been mindful of this fact and to have done what a reasonably prudent person would be expected to do under the circumstances to have avoided the accident, as the result of skidding on said highway, and if both of them could have avoided the accident in the exercise of ordinary care, but failed to do so, neither of them could recover.''

The court, in granting this special request, qualified the same with the following caution:

''I charge you that with this qualification, heretofore explained to you, I add to that request this:

''Provided their failure to exercise this care was the direct and proximate cause of the injury they received.''

It was insisted that the effect of this qualification of the charge

was to completely destroy the effect of this charge on the rule of contributory negligence, and with this qualification the jury was in effect instructed that, if both of the plaintiffs could have avoided the accident in the exercise of ordinary care, they would yet be entitled to recover unless their failure to exercise such care was the direct and proximate cause of the injury they received; that this qualification of the special request in reality makes the defendant's liability turn upon the question as to whether the plaintiff's negligence alone caused the accident without respect to whether it was a contributing cause and without respect to whether the accident would not have occurred except for the plaintiffs' negligence. It was further insisted that this qualification of the defendant's special request on contributory negligence tended to further unduly emphasize and cast a doubt upon the question to be determined by the jury as to whether the plaintiffs or either of them were negligent, and was confusing and misleading, and that the request was complete in itself and needed no qualification.

We are unable to see anything in these portions of the charge which is not accurate and in accordance with the law above cited. But, if there were any inaccuracies in the portions of the charge complained of, the errors were corrected by the subsequent paragraph of the charge, which is as follows:

"The defendant is not bound to necessarily sweep the highway, not bound to do anything more than what a person in the exercise of ordinary care and prudence would have done under similar circumstances. It had the right to construct that water pipe and dig the ditch; it had the right to place a reasonable amount of dirt in the exercise of its prerogative there in the laying of the pipe upon this highway; but it had no right to create a nuisance, or to do anything that was a menace to the public along there in the exercise of ordinary care."

The charge as a whole simply instructs the jury to apply the standard of ordinary care under the circumstances.

■ Defendant also complains of the action of the court in qualifying its special request No. 3, on contributory negligence, by stating that the failure of plaintiffs to exercise ordinary care would not bar recovery, unless such failure "was the direct and proximate cause of the injury they received." The court had already fully charged the jury on the question of contributory negligence and made it clear that the defendant would not be liable if both it and plaintiffs were guilty of negligence proximately contributing to the accident. The use of the word "the" instead of "a" was a harmless inadvertence.

The court further charged:

"If both parties should be guilty of such negligence, that is negli-

gence directly and proximately causing or contributing to the injury, still the defendant would not be liable.''

■ The charge must be considered as an entirety. Memphis Street Ry. v. Wilson, 108 Tenn., 618, 69 S. W., 265.

■ 3. We do not think that the verdict of $10,000 in favor of Mrs. Draughon is excessive, when the extent and nature of her injuries and her suffering are considered.

A number of bones of her face were broken—several bones that support the teeth-bearing part of the mouth were broken so that her upper set of teeth fell down into her mouth, in the manner of a plate of false teeth. The bone of her nose was broken. The upper end of her left arm bone, known as the humerus, was broken. The doctors did not think it was advisable to administer an anesthetic on account of the condition of her face. The setting of the bones of her face and her arm caused extreme pain. The bones of her face were set by putting a brace in her mouth to hold up the roof of it; a plaster of paris cast was put on her head and wires from it connected to this brace; every day the wires were drawn tighter to force the bones back into place. All of this had to be removed each day when she was fed; only liquids could be given her. The bones of her arm had to be drawn back into place by means of a pulley.

Now that all bones have knitted back, the appearance of her face is different, there is a depression on one side. The sinuses of her nose are somewhat obstructed, and she breathes through her nose with difficulty, which somewhat affects her speech. Her teeth did not occlude as formerly, and a great deal of work has had to be done on them so she could chew. Her arm is slightly shorter and not quite straight.

She was in a hospital for five weeks and away from her job more than two months. Her hospital and doctors' and dental bill amount to about $900, and she lost about $200 in loss of time from work; hence we think the verdict was not excessive.

No objection was made to the amount of the judgment in favor of Mrs. Hunter.

It results that all the assignments of errors must be overruled, and judgments will be entered in this court for the respective amounts entered in the lower court in favor of the respective plaintiffs below with interest from April 4, 1934, to the present, against the Radnor Water Company. The cost of the cause, including the cost of the appeal, is adjudged against the water company and the sureties on its appeal bond.

Faw, P. J., and DeWitt, J., concur.

On Petition for Rehearing.

CROWNOVER, J. These cases are again before us on petition for a rehearing, in which we are asked to find additional facts.

We have carefully considered the petition and re-read the record, and we are of the opinion that our original opinion is correct on the facts of the cases. This petition asks the court to find additional facts which we think are immaterial. We will discuss each separately.

■ 1. Under section 1 of our opinion we stated that "the testimony for the defendant Water Company was that after the ditch was filled the road was scraped off with shovels, which was the usual and customary way of cleaning up a road after excavating." We will amend that statement to read, "with 'square pointed' shovels, the usual square shovel."

However, it is immaterial with what utensils or implements the road was scraped if the jury found that clay was left on the road in sufficient amount to make it dangerous when wet.

2. There is no statement anywhere that there were piles of dirt in front of Turbeville place at the time of the accident. It was found that the dirt was piled on the surface of the road when the ditch was dug, and, after the pipe was laid and the ditch filled, a quantity of clay, some of it in lumps as large as a goose egg, was left scattered over the paved part of the highway.

■ 3. It would be unnecessary for the court to find that the water company was not required to remove all "particles" of dirt, when the evidence was that lumps as large as goose eggs were left on the road; hence this request is refused.

■ 4. It is unnecessary for the court to find that it is impossible to keep the highway entirely free from dirt, when the effect of the verdict is that it was coated with clay. This request is refused.

5. The undisputed testimony is that the paved portion of the Antioch pike is about 16 to 18 feet wide. Whether two automobiles can pass each other is a mathematical proposition, and the aid of the court is unnecessary to determine this question. However, witnesses testified there was ample room to pass.

6. There was no evidence that mud was tracked on the road at the Turbeville place. We have carefully read the testimony of defendant water company's witnesses and find they none testify that mud or clay was "tracked" by automobile tires on the roadway in front of the Turbeville place, the scene of the accident. Its witness, Saindon, after testifying that there was no mud on the road, testified that it would have been possible for automobiles to have driven across the newly filled ditch (after the rain which had started an hour before), and to have tracked mud onto the road. He also

testified that beyond the Turbeville place, towards Antioch, where dirt was piled in the road, automobiles would run through the mud and their tires carried it onto the road. But this place was beyond the Turbeville property. Thompson testified that in excavating it is impossible to keep automobiles from tracking mud. He also said mud could not have been tracked at the Turbeville place. Gibson said automobiles would track mud. But he also said there was no place around Turbeville's where mud could be tracked onto the road. He said cars could have run into the ditch and have tracked mud, but he did not think this could have happened in front of Turbeville's.

The water company's defense at the trial was, not that the mud on the road was brought by automobile tires, but that there was no mud.

The court finds the additional fact that some mud was tracked onto the Antioch pike but not in front of Turbeville's.

7. It is immaterial how many automobiles usually traveled on the Antioch pike.

8. The jury has found that Mrs. Hunter's automobile skidded in front of Turbeville's on account of the wet clay on the road, and there is evidence to support it. It is immaterial whether any other automobile skidded.

9. Photographs are aids to the jury in understanding the evidence or the situation or condition of premises material and relevant to the issues. Jackson v. Nashville, 17 Tenn. App., 413, 418, 68 S. W. (2d), 137. These photographs went to the jury, and the jury found in favor of the plaintiffs. Photographs have not the weight of physical facts, and the court will not find that they contradict the witnesses in the face of the jury's verdict. Jackson v. Nashville, supra.

10. Relative to the amount of the judgment in favor of Mrs. Hunter: While defendant assigned errors that the verdict was excessive, it did not discuss the matter, and we thought it had abandoned these assignments.

No reasons were assigned why this verdict was excessive; therefore the court cannot consider the assignments. Rule 12, Rules of the Court of Appeals, 17 Tenn. App. iv; Powers v. McKenzie, 90 Tenn., 167, 16 S. W., 559; McDonnell v. Amo, 162 Tenn., 41, 34 S. W. (2d), 212.

However, a verdict of $500 in favor of Mrs. Hunter is not excessive. The repair bill on her automobile was $119.50 and her doctor's bill was $25. She received a severe blow on her leg which necessitated the cutting out of the flesh and sewing up the wound. She sustained two other minor injuries; hence, we think the verdict was reasonable.

382

Our former opinion will be modified to the extent hereinabove set out. The petition in all other respects is denied.

Faw, P. J., and DeWitt, J., concur.