# GREAT ATLANTIC AND PACIFIC TEA COMPANY.
## v. ESTELLE LYLE. —351 S. W. (2d) 391.

Eastern Section. June 27, 1961.

Certiorari Denied by Supreme Court October 20, 1961.

John T. Fort, Chattanooga, for plaintiff in error.

Dietzen, Graham & Dietzen, Chattanooga, for defendant in error.

COOPER, J. Referring to the parties as they appeared below, this is an appeal by the defendant, The Great Atlantic and Pacific Tea Company from a judgment of $3,500.00 awarded the plaintiff, Estelle Lyle, as

compensation for personal injuries received in a fall on a parking lot maintained by the defendant for the use of its customers.

The plaintiff, Estelle Lyle, sued the defendant Great Atlantic and Pacific Tea Company and Ethel M. Owen for personal injuries received when she fell on the parking lot owned by the defendant Owen and leased to the defendant Atlantic and Pacific Tea Company. The plaintiff alleged that on September 22, 1959 about 2:45 p.m. she drove her car diagonally up to and against the sidewalk next to the defendants' store building; that she alighted from her automobile and proceeded to walk towards the store; that as she approached the sidewalk she stepped into "a deep depression in the asphalt surface" of the parking lot and fell, receiving the injuries about which she complained. The plaintiff alleged that the depression was approximately 12 inches across and approximately 4 inches deep, and that it was "difficult to see by persons alighting from an automobile and walking across the asphalt surface in the direction of the store building."

The plaintiff charged that the defendant landlord, Ethel M. Owen covenanted to make repairs to the store building and the area surrounding the store, including the parking lot; that the defendant owner had actual knowledge of the defect in the surface of the parking lot and was negligent in failing to make repairs when she knew or should have known that the defect was dangerous and likely to cause injury. The plaintiff charged that the defendant Atlantic and Pacific Tea Company was negligent "in that when they had actual knowledge of the defect they failed to take any steps to repair it or block

off the area or give warning." Plaintiff averred that the negligence of the defendants was the direct and proximate cause of the accident and plaintiff's resulting injuries.

Special pleas were filed by both the owner and the Atlantic and Pacific Tea Company. The material averments of the defendant Atlantic and Pacific Tea Company's special pleas were that the declaration stated no cause of action for the reason the alleged defect was trivial and was of such trivial nature as not to be actionable; that if there was a depression or raised surface on the parking lot, the condition was not hidden but was out in the open, obvious, apparent and easily seen; that the defendant had neither actual nor constructive knowledge of the depression or raised place; that the depression or raised place, if exising, was out in a lot used for parking automobiles and not in a place where people were expected to walk; that the plaintiff was not using due care for her own safety when she alighted from her automobile and as she walked toward the store; that if the depression were dangerous, the plaintiff assumed the risk of walking through the dangerous area; and that the duty of repair was imposed on the owner by reason of the lease contract.

At the conclusion of the plaintiff's proof, a voluntary non-suit was entered as to the defendant, Ethel M. Owen. The defendant, Atlantic and Pacific Tea Company moved for a directed verdict at the close of the plaintiff's proof and at the close of all the proof. These motions were overruled, and the case was submitted to the jury, which returned a verdict for the plaintiff for $3,500.00. The defendant Atlantic and Pacific Tea Company, properly

filed its motion for a new trial, which was overruled. The defendant Atlantic and Pacific Tea Company then filed a motion for judgment notwithstanding the verdict, which also was overruled, and judgment was entered in accordance with the jury's verdict.

The defendant appealed, insisting that the plaintiff's declaration stated no actionable negligence; that there was no evidence to support the verdict of the jury; that under the undisputed proof the plaintiff was guilty of proximate contributory negligence; that the plaintiff assumed the risk of injury; that the trial judge erred in admitting certain photographs as evidence and in failing to charge the jury as requested by the defendant, and that the verdict was excessive.

 In its first assignment of error, the defendant urges that the trial court erred in not directing a verdict for the defendant on the ground that the "plaintiff's declaration stated no actionable negligence since the depression was of a trivial nature;" and, further, that the plaintiff's declaration failed to allege facts to show that the defect was not as obvious to the plaintiff as it was to the defendant or anybody else. We have carefully read the declaration in this case and are of the opinion it states a valid cause of action.

Considering the specific objections of the defendant, the plaintiff's declaration alleged that the "depression was approximately one foot across and approximately four inches deep and was contiguous to a raised or elevated spot in the surface of the asphalt of about the same width and being approximately four inches high. Said depression and raised surface were so situated that they were difficult to see by persons alighting from an auto-

mobile and walking across the asphalt surface in the direction of the store building.''

Admittedly, the statement of facts in the plaintiff's declaration could have been more specific; however, the defendant did not demur to the declaration nor did it file a motion to make the declaration more specific. Instead, the defendant filed special pleas which placed in issue, among other things, the question of whether or not the alleged defect was ''trivial'', and whether or not the defect was hidden or out in the open and easily seen.

The rule is well settled that where a declaration contains a defect, either in substance or form, that would have been fatal on demurrer, yet if, on the trial, the issues required proof of the facts so defectively stated or omitted, the defect is cured by the verdict or the judgment. Barrett v. Reed, 46 Tenn. App. 265, 327, S. W. (2d) 68, and cases there cited.

This assignment is therefore overruled.

The defendant next insists that the court erred in not directing a verdict for the defendant at the close of the proof as (1) there was no evidence to support the verdict; (2) the undisputed evidence shows that the plaintiff was guilty of proximate contributory negligence, and (3) the plaintiff, as a matter of law, assumed the risk of attempting to cross a depression which was obviously dangerous.

In its brief, the defendant concedes that the plaintiff was an invitee at the time of her fall, and that the defendant owed to the plaintiff the duty to exercise reasonable care to maintain its premises in a safe condition. Phillips v. Harvey Co., 196 Tenn. 174, 264 S. W. (2d)

810; Gargaro v. Kroger Grocery & Baking Co., 22 Tenn. App. 70, 118 S. W. (2d) 561.

The evidence in this case shows that the defendant maintained a parking lot around its store building for the use of its customers. This parking lot was paved with asphalt and was smooth except for two or three depressions where the surface had settled under the weight of the automobiles. At the front of the store there was a sidewalk which ran the width of the building. The parking lot next to the sidewalk was marked to provide for diagonal parking. The plaintiff parked her automobile in one of the designated parking spaces so that the front of her automobile was a foot or two from the edge of the sidewalk. The plaintiff alighted from her automobile, took one or two steps toward the sidewalk, stepped into a depression and fell. The depression was described by the witnesses as being from 12 to 15 inches in width and from 6 to 8 inches in depth. The depression was located 12 to 18 inches from the sidewalk and in that portion of the parking lot where customers would normally walk after alighting from their automobile when it was parked in the parking space used by the plaintiff.

The plaintiff testified that she was looking ahead in the direction she was walking and did not see the depression as it was in the shadow cast by her automobile, was the same color and texture as the rest of the parking lot, and that there was no break in the asphalt surface to call attention to the depression.

The proof further showed that L. C. Smith, manager of the defendant's store, testified that, as early as the middle of August 1959, he knew there were defects in

the surface of the parking lot caused by the pavement sinking; that as soon as he noticed the pavement was sinking he pointed out the depression to the landlord and requested that the landlord fix them; that the depression shown in the exhibits could be one of those he specifically pointed out to the landlord. He further testified that no repairs were made on the parking lot between the time the depressions became known to him and the time that the plaintiff fell; that the plaintiff reported her fall to the defendant's assistant manager, who in turn reported it to the Atlanta office. After receiving this report, the Atlanta office of the defendant company wrote a letter to Mrs. Ethel M. Owen, the landlord, stating:

"We have a report from the store at 2806 East 50th Street, Chattanooga, that there is a place in the paved parking area which has a hazardous condition due to the fact that part of it has sunk, due possibly to a soft area underneath."

The defendant strongly insists that a defect of the dimensions of the one described in the above evidence is not an actionable defect as our courts have on numerous occasions found defects of similar size to be trivial. Batts v. City of Nashville, 22 Tenn. App. 418, 123 S. W. (2d) 1099; City of Memphis v. McCrady, 174 Tenn. 162, 124 S. W. (2d) 248; Rye v. City of Nashville, 25 Tenn. App. 326, 156 S. W. (2d) 460; City of Memphis v. Dush, 199 Tenn. 653, 288 S. W. (2d) 713.

The height or depth of an obstruction is not made the test of negligence in any of the cases cited by the defendant. To the contrary, our courts have repeatedly stated that the question of whether a defect is actionable is to be determined from all of the surrounding circum-

stances and conditions, and not just from height and depth alone. City of Winchester v. Finchum, 201 Tenn. 604, 301 S. W. (2d) 341, and cases discussed therein.

As was said in Batts v. City of Nashville, supra [22 Tenn. App. 418, 123 S. W. (2d) 1102]:

"It will not do to rest the rule upon inches only. That is a factor in arriving at the result, but the other conditions and surrounding circumstances must also be considered."

In City of Memphis v. McCrady, supra [174 Tenn. 162, 124 S. W. (2d) 249], the Court said:

"In none of the cases is the height or depth of the obstruction made the test of negligence. Liability is dependent upon the breach of duty imposed by law upon municipalities to guard against dangerous obstructions on the sidewalk, and the municipality is liable when it appears that the obstruction constituted a danger from which injury might be reasonably anticipated * * where the evidence is conflicting, or the facts such as to authorize different inferences as to whether the defect is a dangerous obstruction calculated to cause injury, the case must be submitted to the jury * * *."

From the above authorities it is evident that the test to be applied in determining whether a defect is actionable or trivial is whether the defect constituted a danger from which injury might be reasonably anticipated under *all* the circumstances and conditions.

As we have seen, the defendant had actual knowledge of the defect in question and realized it needed to be repaired; that the depression caused by the sinking of

the pavement on the parking lot was difficult to see under any circumstances as it was paved with the same material as the rest of the parking lot and there was no obvious break in the pavement; that on the occasion in question the shadow cast by plaintiff's automobile, which was properly parked in a designated parking space, fell across the hole and made it even more difficult to see.

In the light of the foregoing authorities and construing the evidence most favorably to the plaintiff, as we must do, we think the question of whether the defect was actionable or trivial was a question for the jury. Further, we are of the opinion that the jury could well find that the defect was actionable; that the defendant was guilty of negligence in failing to repair the known defect in the parking lot; that the plaintiff exercised reasonable care for her own safety and that the defendant's negligence was the proximate cause of plaintiff's fall and resulting injuries.

■ The defendant also assigns as error the trial court's refusal to charge the following special requests:

"A person is required to see that which is plainly visible and, if the undisputed facts show that had he looked he would have seen it, his testimony that he looked and did not see it is incredible and will be rejected."

"The owner or occupant of the premises is not required to keep the premises absolutely safe and in determining whether proper care has been exercised it is proper to consider the nature of the property, the use for which it is intended, and the particular circumstances of the case."

"Mrs. Lyle, the plaintiff, was an invitee to the premises and the invitee assumes all normal risks attendant upon his use of the premises."

These special requests were included, in substance, in the main charge of the court as follows:

"Ladies and gentlemen, the defendant company is not automatically liable just because the plaintiff fell in the parking lot leased by them, but only if they were guilty of negligence in the maintenance of the lot and that negligence free of any negligence that proximately contributed to cause the accident. Those who invite others upon their premises for the purpose of lawful business are required to have and keep their premises, such as entrances, parking lot and so forth to be used by customers in a reasonably safe and suitable condition for the purposes of the particular business, and if the defendant failed to observe this duty, then it would be guilty of negligence, and if that negligence proximately causes an injury to one lawfully on the premises in connection with the business, such person would be entitled to recover.

"If there was a defect or hole there in the parking lot, and if the defendant company knew of the unsafe or dangerous condition, if such existed, or if by the exercise of reasonable care and diligence they could have ascertained that the parking lot was defective or unsafe, then it was their duty, as far as customers were concerned, to repair the defect or warn the plaintiff about such defect, irrespective of any lease agreement with the owner to the contrary. If the defendant failed to do this, then the defendant

would be guilty of negligence, and if you find that the defendant's negligence was the proximate cause of this accident, then the plaintiff would be entitled to recover, provided she herself was guilty of no negligence that proximately contributed to the cause of her injury.

"Now, it was the duty of the plaintiff in this case to exercise reasonable care and precaution for her own safety. It was her duty to use that degree of care and precaution as would be expected of an ordinarily prudent person situated as she was there at the time of the accident, and if she failed to do that, she would be guilty of negligence, and if her negligence proximately caused or proximately contributed to cause this accident, then she could not recover, and if the defect she complains about was obvious to a prudent person exercising reasonable care under the circumstances and conditions as present there, and she failed to see it, and that proximately caused or proximately contributed to cause this accident and her injuries, she could not recover, and you must return a verdict for the defendant."

To deny a special request the substance of which has been covered in the general charge is not error. White v. Seier, 37 Tenn. App. 437, 264 S. W. (2d) 241; Jones v. Noel, 30 Tenn. App. 184, 204 S. W. (2d) 336; Graham v. Cloar, 30 Tenn. App. 306, 205 S. W. (2d) 764; Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 211 S. W. (2d) 450; Carman v. Huff, 32 Tenn. App. 687, 227 S. W. (2d) 780.

■ It is further insisted that the trial court erred in refusing to give the following additional request:

"A recovery for personal injuries sustained in a fall will not be allowed because of the existence of trivial holes or depressions. Holes or depressions less than 5 inches in depth are trivial."

As heretofore stated, the question of whether a defect is actionable is to be determined from all of the surrounding circumstances and conditions, and not just from height of depth of the defect, alone. This being true, the request as tendered the court was not a true and correct statement of the law applicable to the case.

Accordingly, this assignment is overruled.

It is next insisted that the court erred in admitting photographs (Exhibits 1 through 5) because "it is speculative as to whether the picture[s] [are] of the place where the plaintiff allegedly fell." These pictures were taken by Oscar W. Lyle, Jr., son of the plaintiff, on the day after the accident. Before taking the pictures Lyle placed a stick across the depression in the front of the store so that the depression would show in the picture and its depth could be determined. Lyle was not present at the time his mother fell, and made the pictures based on information given him by his father.

As stated in Little v. Nashville, Chattanooga & St. Louis Railway Co., 39 Tenn. App. 130, 281 S. W. (2d) 284, 293:

"The general rule is that photographs stand on the same footing as diagrams, maps or models, and rest to some extent on the credibility of the witness introducing them. They must be shown to be faithful representations of the place or subject, substan-

tially as it existed at the time involved in the controversy. When so shown and duly verified, the law is settled that photographs are permissible as aids to the jury in arriving at an understanding of the evidence, or of the situation or condition or location of objects or premises, material or relevant to the issues. Jackson v. City of Nashville, 17 Tenn. App. 413, 418, 68 S. W. (2d) 137; Radnor Water Co. v. Draughon, 19 Tenn. App. 371, 89 S. W. (2d) 186; Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613.'' See also Brown v. State, 186 Tenn. 378, 210 S. W. (2d) 670; Hughes v. State, 126 Tenn. 40, 148 S. W. 543.

The record in the present case discloses that the plaintiff testified that her fall occurred at the edge of the second parking space to the left of the entrance of the store. The pictures in question were then exhibited to her and she positively identified the scene and the depression shown in the pictures and stated that the pictures correctly portrayed the depression and the surrounding premises as they were when she fell with the exception of the stick that had been placed across the depression. Plaintiff and her counsel fully informed the jury that the stick had ''no bearing on the situation at all.''

In Management Services, Inc. v. Hellman, 40 Tenn. App. 127, 289 S. W. (2d) 711, 718, this Court stated:

'' 'The fact that there have been changes in conditions, including even substantial changes, will not necessarily exclude a photograph where the changes can be and are explained, so that the photograph, as explained, will give a correct understanding of the

condition existing at the time to which the controversy relates, and be practically instructive.' 32 C. J. S. Evidence, sec. 715, p. 623. The fact that a photograph is incorrect in some particulars does not render it inadmissible as evidence, but merely affects its weight. Hughes v. State, 126 Tenn. 40, 148 S. W. 543.''

We are of the opinion that the photographs were properly identified, and that they correctly portrayed the ''condition'' of that part of the parking lot on which the plaintiff fell.

This assignment is overruled.

It is further insisted by the defendant that the verdict awarded the plaintiff was so excessive as to indicate passion, prejudice and caprice on the part of the jury.

The evidence in this case discloses that when Doctor E. E. Reisman, Jr. examined the plaintiff on the morning after her fall he found ''a very excessive hematoma, or bruise, on her right hip, marked limitation of motion and pain on motion of her back, a hematoma with marked swelling and discoloration of the right ankle. An X-ray examination revealed ''some slipping of the fourth lumbar vertebra'' which required that the plaintiff be hospitalized and be placed in traction to relieve her pain and to correct the ''slipping''. Doctor Reisman further testified that the treatment corrected the alignment of the plaintiff's vertebra but that plaintiff ''would have pain for a long period of time from the traumatic injury to the muscles and ligaments incident to the displacement''.

During the period of hospitalization Doctor Reisman performed a pelvic examination as a result of complaints

by the plaintiff. This examination revealed that the plaintiff had a "moderate cystocele and rectocele with some prolapse of the stump of the uterus column, the body of the uterus having been removed many years previous".

While there was sharp dispute in the medical testimony as to whether this condition was attributable to the plaintiff's fall, Doctor Reisman testified that:

"A patient may have a cystocele, rectocele, layer of, a thin layer of tissue maintaining the rectum in fairly normal position and under severe stress or strain that certain tear of that small layer of tissue will produce a rectocele, much the same as a hernia is produced by lifting.

\* \* \* \* \* \*

"I have no indication that she ever had a cystocele before. However, I certainly would not state dogmatically that an injury primarily caused a cystocele or rectocele or prolapse, I think she probably had some degree of relaxation and tears incident to her childbirth, and previous surgery had weakened the wall, and I think that her symptoms which became evident subsequent to this injury were probably produced as a result of the injury."

Doctor Reisman further testified that this condition was painful and needed to be corrected by surgery at a cost of approximately $700.00.

The plaintiff remained in the hospital for ten days for treatment of her back and then was confined to her home for approximately three months. During this time she was unable to look after her personal needs or her home

and had to employ a maid at a total cost of approximately $225.00.

Plaintiff's medical expenses at the time of the trial were in excess of $1,000.00 and, as heretofore stated, the plaintiff may need another operation at a cost of $700.00.

Considering the above evidence of injury and expenses, we are of the opinion that an award of $3,500.00 was not excessive.

Having overruled all assignments of error in this case the judgment below is affirmed with interest. Costs are adjudged against the defendant.

McAmis, P. J., and Hale, J., concur.