# INTERSTATE LIFE AND ACCIDENT COMPANY v. WILLIAM H. COX, JR., Administrator of the Estate of Jennie Crow Hirst.—396 S.W.(2d) 80.

Eastern Section. March 29, 1965.

Certiorari Denied by Supreme Court November 1, 1965.

42

Campbell & Campbell, Chattanooga, for plaintiff in error.

Atchley, Atchley & Cox, Chattanooga, for defendant in error.

COOPER, J. William H. Cox, Jr., as administrator, recovered a $6,000.00 judgment against the defendant, Interstate Life and Accident Insurance Company, as damages for the wrongful death of Jennie Crow Hirst, who was injured in a fall on a parking lot owned and operated by the defendant.

The parking lot, which was located on the South side of East 8th Street directly behind the Interstate Building in Chattanooga, Tennessee, was of the self-service variety, and was used primarily by employees of Interstate. Approximately 15 parking spaces were designated as "in and out" spaces for use by patients of doctors who leased office space in the Interstate Building. Such patients were allowed to park 1 hour without charge, but were required to pay 10c for each additional hour or part thereof. A parking attendant was constantly on

the lot to collect parking charges and to see that no one parked on the lot who was not authorized to do so.

Jennie Crow Hirst, in company with her daughter, Mrs. Lillie Hudnall, parked on the Interstate lot on the morning of December 1, 1961. On their return to the lot, Mrs. Hudnall and Mrs. Hirst stopped at the attendant's office, paid the parking ticket and walked toward their automobile, with Mrs. Hudnall holding onto Mrs. Hirst's arm to steady and support her. On nearing the automobile, Mrs. Hudnall relinquished her hold on Mrs. Hirst's arm and walked a step or two ahead to open the automobile door. Within a few steps, Mrs. Hudnall heard her mother fall, turned, and found her sitting in a water-filled hole. On examination, it was found that Mrs. Hirst's right thumb and left leg were broken. She died three days later.

Plaintiff, as administrator, charged that Mrs. Hirst's injuries and resulting death were due to the negligence of Interstate (1) in failing to maintain the surface of the parking lot in a reasonably safe condition, (2) in failing to warn Mrs. Hirst of the danger attendant to the use of the lot, and (3) in inviting Mrs. Hirst and others to use the lot when it knew, or should have known, of the dangerous condition existing on the lot.

The defendant filed special pleas denying that there were any material defects in the parking lot, and averring that, if there were, they were obvious and were known by Mrs. Hirst as she used the parking lot frequently. The defendant also took the position that Mrs. Hirst's fall was the direct result of her own negligence (1) in not keeping a proper lookout for her own safety, and (2) in walking unaided, knowing that her sense of sight, balance, and general physical condition were not good due to her advanced age. As a corollary, the defendant also charged

that Mrs. Hudnall was guilty of negligence which would prevent her sharing in any recovery for the wrongful death of her mother, in that she allowed her mother to walk unaccompanied and unsupported. This latter plea was struck on motion of plaintiff prior to trial.

After hearing the evidence, the jury resolved the issues in favor of the plaintiff and returned a verdict of $5,000.00 for the loss of Mrs. Hirst's life and $1,000.00 for medical and funeral expense. The defendant perfected its appeal, directing its numerous assignments of error to the trial court's refusal to direct a verdict, to alleged prejudicial remarks and actions of the trial court, to the court's action in striking a portion of the special plea, to the admission of medical testimony relating to the history of injury given by the deceased and the cause of death, and to the amount of the verdict.

██ We have repeatedly pointed out that in reviewing a case on appeal, where the appeal is from a judgment based on a jury's verdict, we do not weigh the evidence to determine the preponderance thereof, nor do we decide the credibility of witnesses. McAmis v. Carlisle, 42 Tenn. App. 195, 300 S.W.(2d) 59. Our review is limited to a determination of whether there is any material evidence to support the verdict, and "it [our review] must be governed by the rule safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.(2d) 897. And if there is material evidence to support the verdict, it must be affirmed. City of Chattanooga v. Ballew, 49 Tenn.

App. 310, 354 S.W.(2d) 806, and numerous cases there cited.

■■■■ It is undisputed that at the time of her fall, Mrs. Hirst was an invitee and that the defendant owed her the duty to exercise reasonable care to maintain the parking lot in a safe condition, including the duty of removing or warning against a dangerous condition which it knew or, in the exercise of reasonable care, should have known to exist. Great Atlantic and Pacific Tea Co. v. Lyle, 49 Tenn.App. 78, 351 S.W.(2d) 391; Walls v. Lueking, 46 Tenn.App. 636, 642, 332 S.W.(2d) 692; Phillips v. Harvey Co., 196 Tenn. 174, 264 S.W.(2d) 810. The liability of the defendant, if any, is predicated upon a superior knowledge of a perilous condition on the premises and defendant would not be liable for injuries sustained from dangers that were obvious, reasonably apparent or as well known to the invitee as to the defendant. Broome v. Parkview, Inc., 49 Tenn.App. 725, 359 S.W.(2d) 566; Kendall Oil Co. v. Payne, 41 Tenn. App. 201, 293 S.W.(2d) 40; Illinois Cent. Ry. Co. v. Nichols, 173 Tenn. 602, 118 S.W.(2d) 213, 38 Am.Jur. Negligence sec. 97, pp. 757, 758. The invitee assumes all normal or obvious risks attendant on the use of the premises. Gargaro v. Kroger Grocery & Baking Co., 22 Tenn.App. 70, 118 S.W.(2d) 561.

In the present case, the record shows that defendant's parking lot was constructed in 1951, and has been used constantly since that time. The original construction required a deep earthen fill and the defendant used ''a rock binder course'' as pavement to give the fill time to settle. In 1953, the parking lot was paved with asphalt. No

repairs were made to the surface of the lot between the time the lot was paved and the day Mrs. Hirst fell.

Various employees of the defendant made regular weekly and monthly inspections of the lot, and the attendant "covered the lot" almost daily. Corley Young, defendant's building manager who inspected monthly, was the only employee who admitted seeing depressions or holes in the surface of the lot. He testified that there were several in the general area where Mrs. Hirst fell, but stated that he did not consider them hazardous. He described the hole where Mrs. Hirst fell as being "a tire and half wide where cars had repeatedly been in there"; and not more than 1 to 1¼ inches deep.

The parking lot attendant, Joe Goodson, who went to the aid of Mrs. Hirst immediately after her fall, testified that the hole was 18 inches to 2 feet in diameter and from 1½ to 2 inches in depth.

Mrs. Hudnall described the hole as being "right in the line of passing as you go there between the cars" and that it was filled with "black, murky, greasy water or something, the color of the pavement around the hole." Mrs. Hudnall further described the hole as being about 25 inches long, 15 to 18 inches wide and 2 or 3 inches deep.

Several other employees of the defendant testified as to the size and shape of the hole where Mrs. Hirst fell, and the fact that there was no break in the pavement.

From this evidence, we think the jury reasonably could find that Mrs. Hirst was caused to fall by stepping unexpectedly into a hole or depression in the surface of defendant's parking lot "where cars had repeatedly been in there"—showing the hole not to be of recent origin; that the hole was so located that it was reasonable to

anticipate that the patrons of the lot would walk near, if not in it, in going to and from their automobiles; that the hole was difficult to see under any circumstances as it was paved with the same material as the rest of the lot and there was no obvious break in the pavement; that on the occasion of Mrs. Hirst's fall, the hole was filled with water the color of the surrounding pavement, which made it even more difficult to see. These findings would, in our opinion, justify and support the jury's conclusion that the defendant knew or should have known of a dangerous condition existing on its parking lot, and that it was guilty of negligence proximately causing the accident and resulting injuries to Mrs. Hirst in failing to correct the condition, or to warn Mrs. Hirst of its existence. Further, in view of the evidence that the hole was difficult to see under the circumstances existing at the time of Mrs. Hirst's fall, the jury reasonably could find that the plaintiff exercised reasonable care for her own safety.

Defendant strongly insists that Mrs. Hirst was guilty of contributory negligence in walking unaided over the parking lot, pointing to the fact that she was 84 years of age and that Mrs. Hudnall usually held onto her arm to steady her as she walked. Many questions were asked concerning Mrs. Hirst's physical condition, but they all added up to the fact that ''she was in moderately good health for her age'', and there was no showing that she could not walk unaided. We think under the evidence the issue of whether Mrs. Hirst was guilty of negligence in walking unaided was for the jury not the court.

It is noted that defendant has assigned as error the trial court's action in striking from the special pleas the corollary averment that Mrs. Hudnall was guilty of negligence which would bar her sharing in the recovery

in that she allowed her mother to walk unaccompanied and unaided. We agree with the defendant that the plea should not have been stricken; however, we cannot agree that such action was prejudicial or materially affected the results of the trial in view of the necessary finding of the jury, under the pleadings, evidence and charge, that Mrs. Hirst was not guilty of negligence in walking alone and unaided. If it were not negligence for Mrs. Hirst to walk alone, it follows that it could not be negligence for her daughter to permit her to do so.

The defendant contends also that the trial court was guilty of prejudicial misconduct in constantly interrupting counsel and commenting on the evidence so as to lead the jury to believe that questions asked by defendant's counsel were improper, pointless, or repetitious. In support of its position, defendant has cited us to numerous excerpts from the record—too many to be copied into the opinion. We have read the excerpts in context and have found *no basis* for holding that defendant was in any way prejudiced by the actions of the trial court.

The defendant insists, in two different assignments of error, that the trial court erred in admitting testimony of Dr. Fred E. Marsh relative (1) to the medical history given by Mrs. Hirst in the course of his examination of her after the fall, and (2) the cause of death.

"Where it appears that the physician testifying was called by the injured person in his ordinary professional capacity and for purposes of securing relief from pain and for medical treatment, and there are no circumstances casting suspicion on the genuineness of the utterances, all statements of symptoms and sufferings, whether past or present, and though involving statements as to the nature of the accident, if necessary to diagnosis by the

physician, may be testified to by him. * * *" 3 Jones on Evidence (2 Ed.) Sec. 1217, pp. 2234-2235, quoted with approval in Gulf Refining Co. v. Frazier, 15 Tenn.App. 662, 689. See also City of Maryville v. McConkey, 19 Tenn.App. 520, 90 S.W.(2d) 951, 955.

■ Likewise, the opinions of physicians as to the cause of death are admitted in evidence where the opinions are founded either on personal knowledge of the facts of the case or upon a statement of the symptoms of the disease, or manner of dying, as detailed by others. If such opinions were not received, it would be impossible in many cases to know the cause or manner of death, especially in those cases where there were no persons present at the time of the death, and no autopsy was performed. See generally Endowment Rank K. P. v. Steele, 108 Tenn. 624, 69 S.W. 336, 337, and numerous cases there cited; National Life and Acc. Ins. Co. v. Follett, 168 Tenn. 647, 80 S.W.(2d) 92; Act-o-Lane Gas Service Co. v. Hall, 35 Tenn.App. 500, 248 S.W.(2d) 398, 404.

■ The record in this case shows Dr. Marsh had treated Mrs. Hirst regularly since 1941; that he examined her minutes before her fall and again immediately after the fall; that he gave her emergency treatment and referred her to an orthopedic physician in the Interstate Building; however, Dr. Marsh continued to see Mrs. Hirst while she was in the hospital and was called by the attending nurse immediately upon the death of Mrs. Hirst.

Under these circumstances, and in the light of the above authorities, we find no error in the admission of Dr. Marsh's testimony.

The defendant next insists that the verdict was excessive and was based on speculation and conjecture.

■ As heretofore noted, the jury returned two separate awards—$5,000.00 for the wrongful death of Mrs. Hirst, and $1,000.00 for medical and funeral expenses—though the two awards were included in a single judgment for $6,000.00.

"Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages * * *, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives * * *." T.C.A. 20-614. The latter damages embrace the pecuniary value of the life of the deceased, to be determined upon the consideration of her expectancy of life, her age, condition of health and strength, capacity, if any for labor and for earning money through skill in any art, trade, profession, occupation, or business and her personal habits as to sobriety and industry. Davidson Benedict Co. v. Severson, 109 Tenn. 572, 72 S.W. 967; Memphis Street Railway Company v. Cooper, 203 Tenn. 425, 313 S.W.(2d) 444.

■ As heretofore noted, Mrs. Hirst received a broken right thumb and a broken left leg in the fall. The method of treating the thumb is not noted in the record; however, it is shown that the broken leg was treated by placing it in a long-leg cast, which extended from the ankle up to the thigh. The record further shows that Mrs. Hirst was "awful nervous after the fall." Later, it was noted that Mrs. Hirst's blood pressure had dropped, and her breathing was becoming shallow. Three days later she became cyanotic and expired. The cause of death was

given as a pulmonary embolism resulting from the fractures.

Dr. Marsh stated that prior to the fall, Mrs. Hirst was in moderately good health for a person 84 years of age. The mortality tables were then introduced showing the life expectancy of a white female, 84 years of age, to be 5.14 years.

Mrs. Hirst's only income consisted of a $50.00 monthly award from the Railroad Retirement Board, which was not enough to provide her with the necessities of life. This pension terminated at her death.

The defendant argues that as there was no direct evidence that Mrs. Hirst suffered pain from her injuries, recovery must be limited to the pecuniary value of her life and that the award of $5,000.00 was excessive. We cannot agree with either insistence. We think pain and suffering reasonably could be inferred from the very nature of the injury, the application and wearing of the cast, Mrs. Hirst's excessive nervousness after the fall, and the fact that she died from an embolism. But, even if the pecuniary value of life were the only measure of damage applicable under the facts of this case, we think the allowance of $5,000.00 as damages for the wrongful death of Mrs. Hirst was not excessive.

As to the award of $1,000.00 for medical and funeral expenses, we think it is excessive by $227.46 as the undisputed evidence fixes the expenses incurred as being $722.54. To make the judgment conform with the proof, we suggest a remittitur of $227.46.

If the remittitur suggested is accepted by the plaintiff, the judgment of the Circuit Court, thus reduced, will be

affirmed. If not, this cause will be reversed and remanded for a new trial.

Costs of the appeal are adjudged against the defendant and its surety.

McAmis, P. J., and Parrott, J., concur.